DAMRON et al., Appellants and Cross–Appellees,

v.

CSX TRANSPORTATION, INC. et al., Appellee and Cross–Appellant.

[Cite as *Damron v. CSX Transp., Inc.,* 184 Ohio App.3d 183, 2009-Ohio-3638.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23025.

Decided July 24, 2009.

Mark R. Baran, Donald J. Kral, and John A. Smalley, for appellants and cross-appellees.

Robert M. Anspach and James R. Carnes, for appellee and cross-appellant.

GRADY, Judge.

{¶ 1} On January 5, 2004, a collision occurred between a vehicle occupied by Courtney Damron and Craig Hensley and a train owned and operated by CSX Transportation, Inc. ("CSX"), at or near a road/rail crossing in Miamisburg. Damron and Hensley were killed. Personal representatives for Damron and Hensley subsequently commenced an action against CSX on claims for relief for wrongful death and survivorship (the "Damron/Hensley" litigation). Amended complaints were subsequently filed.

{¶ 2} On May 30, 2006, Attorney Mark R. Baran filed his notice of appearance as co-counsel for the plaintiffs in the Damron/Hensley case. Thereafter, Baran, who has experience in railroad litigation, conducted extensive discovery and other investigation in support of the plaintiffs' case.

{¶ 3} On October 23, 2007, plaintiffs moved to amend their complaint a fourth time in order to add a claim for relief alleging spoliation of evidence by CSX.

Plaintiffs contended that a CSX employee, Harold "Bud" Barnes, testified in a deposition that he had witnessed another CSX employee, John Silver, destroy photographs of the accident site that were probative of plaintiffs' negligence claim against CSX and that were within the scope of a discovery request plaintiffs had made.

{¶ 4} On October 29, 2007, plaintiffs filed a notice of filing their proposed fourth amended complaint. The proposed amended complaint, as a seventh claim for relief, alleged wrongful destruction of the photographs by CSX and failure to preserve other evidence plaintiffs had sought in discovery. CSX filed a memorandum opposing plaintiffs' request to amend their complaint on November 9, 2007.

{¶ 5} The court overruled plaintiffs' motion to amend their complaint on November 19, 2007. The court found that plaintiffs in the Damron/Hensley case were not materially prejudiced by CSX's alleged destruction of or failure to preserve evidence because the same or substantially similar evidence is available from other sources. The court also found that adding the new destruction/failure-to-preserve claim would require continuance of the trial, which was scheduled to commence on January 7, 2008, a little more than two months after plaintiffs' motion to amend their complaint was filed.

{¶ 6} The pleadings in which plaintiffs sought to amend their complaint were signed by Attorney Baran. On December 7, 2007, CSX moved to disqualify Attorney Baran and his law firm, Elk & Elk Co., L.P.A., from further participation in the Damron/Hensley litigation, and to strike the deposition testimony of Barnes on which plaintiffs had relied in seeking to amend their complaint to add a spoliation-of-evidence claim. CSX contended that statements Barnes made in his deposition were the product of communications between Barnes, a CSX employee, and Attorney Baran concerning the Damron/Hensley case that are prohibited by Prof.Cond.R. 4.2. CSX also contended that Attorney Baran improperly advised Barnes during his deposition to testify concerning matters to which CSX's attorney asserted a privilege.

{¶ 7} The court conducted hearings on CSX's motion to disqualify Attorney Baran and to strike Barnes's deposition testimony over a period of three days, on July 11 and August 1 and 20, 2008. Evidence was introduced showing the following facts relevant to CSX's allegations:

{¶ 8} Harold W. "Bud" Barnes was formerly employed by CSX as a Manager of Field Investigations. Acting in that capacity, Barnes was responsible for CSX's internal investigation of the collision in the Damron/Hensley case, beginning in June 2004 until approximately June 2006, when Barnes sought disability status available to management employees of CSX. Barnes's disability claim arose from injuries he suffered in an auto accident the previous month. CSX had

initially opposed Barnes's disability claim, but after some months' time the claim was allowed.

{¶ 9} On March 22, 2007, Attorney James Brockman, who represented CSX in the Damron/Hensley litigation, visited Barnes at his home. Barnes had worked with Brockman and the CSX legal team in performing his investigations. Barnes by then had been off work for ten months and was unhappy that CSX yet opposed his disability claim.

{¶ 10} According to Attorney Brockman, the purpose of his visit was to ask Barnes whether the internal CSX investigation file in the Damron/Hensley case ever contained photographs of the crossing where the deaths occurred. Plaintiffs had requested discovery of any such photographs. Barnes denied knowledge of any photographs. Brockman testified that Barnes also inquired whether the same attorney continued to represent the plaintiffs in the Damron/Hensley case and that Brockman told Barnes that Attorney Baran and his law firm, Elk & Elk, continued to represent the plaintiffs in that case.

{¶ 11} Barnes testified that Brockman's visit and inquiries made him uneasy, believing that he was being "scoped out." Barnes testified that contrary to his statements to Brockman, he recalled having seen his supervisor at CSX, John Silver, shred photographs from the CSX file in June 2006. After discussions with his wife, they decided that Barnes needed legal representation concerning his disability claim.

{¶ 12} The following morning, on March 23, 2007, Barnes called Attorney Brockman's office and left a telephone message, asking Brockman to call him. When Attorney Brockman returned the call, Barnes told him that he, Barnes, recalled seeing John Silver destroy photographs from the CSX accident file in June 2006. Following that conversation, Barnes telephoned two other CSX officials and repeated the allegation. Barnes also telephoned Attorney Baran at his law office. Telephone records show that the call to Attorney Baran was made after Barnes had called and/or spoken with Attorney Brockman and the two officials of CSX.

{¶ 13} Barnes testified that he called Attorney Baran concerning his disability claim against CSX following calls to several other law offices. Attorney Baran testified that when he received the call from Barnes he recalled that Barnes had worked on the Damron/Hensley case as an investigator for CSX, and for that reason he told Barnes that they could not speak about the Damron/Hensley case. Both Attorney Baran and Barnes testified that their telephone conversation, which lasted 48 minutes and 21 seconds, was confined to Barnes's disability claim and did not involve matters regarding the Damron/Hensley case.

{¶ 14} Attorney Baran testified that as a result of their conversation, he believed that he had an attorney-client relationship with Barnes regarding Barnes's disability claim. Attorney Baran also testified that he told Barnes that due to Barnes's role in the Damron/Hensley litigation, Attorney Baran planned to consult with ethics counsel regarding his ability to represent Barnes. Attorney Baran testified that he did so the following day, March 24, 2007, and on that same day he telephoned Barnes and told Barnes he could not represent him. That conversation lasted almost 16 minutes. Another call Attorney Baran made to Barnes on March 26, 2007, lasted 47 seconds.

{¶ 15} On May 1, 2007, Attorney Baran deposed Kathy Thomson, who preceded Barnes as Manager of Field Investigations assigned to investigate the collision in the Damron/Hensley case. On July 9, 2007, Attorney Baran deposed Barnes. After brief introductory questions concerning Barnes's position with CSX and his disability status, Attorney Baran asked Barnes whether CSX or its attorneys had pressured him to not provide testimony. Barnes replied that an attorney from Columbus had "pressured me to give a statement regarding an investigation he was doing." When asked what that investigation concerned, Barnes responded:

{¶ 16} "He was wanting to question me about some destruction of evidence that I had witnessed.

{¶ 17} "Q. And what destruction of evidence did you witness?

{¶ 18} "A. Mr. Silver, my supervisor, had put some pictures through a shredder in his office.

{¶ 19} "Q. And what pictures were those that Mr. Silver put through a shredder?

{¶ 20} "A. They were pictures showing the crossing accident of, that we're here for showing the ruts in the road and showing the site views of that incident.

{¶ 21} "Q. And do you remember when this happened when you watched—just for the record, who is Mr. Silver?

{¶ 22} "A. He is the Director of Claims."

{¶ 23} Barnes explained that Silver told Barnes that Silver was shredding the photographs because they were not formatted to indicate when they were taken or who took them. Barnes also testified that the photos depicted conditions in the roadbed or track at the accident site that could have contributed to causing the collision in which the decedents in the Damron/Hensley litigation were killed.

{¶ 24} During the deposition, counsel for CSX, Attorney Brockman, asserted a privilege on behalf of CSX to prevent Barnes from responding to certain questions Attorney Baran asked. Attorney Baran nevertheless directed Barnes to answer the questions, and he did.

{¶ 25} At the hearing on CSX's motion to disqualify Attorney Baran and strike Barnes's deposition, another attorney for CSX, David Williamson, testified that prior to Barnes's deposition Williamson had asked Attorney Baran whether he had any prior contact with Barnes and that Attorney Baran denied that he had.

{¶ 26} Other evidence was introduced that CSX wished to have Attorney Baran removed from the Damron/Hensley litigation because of his tenaciousness. Todd Damron, administrator of the estate of Courtney Damron, and Dennis Hensley, administrator of the estate of Craig Hensley, filed affidavits stating that it was important to them that Attorney Baran continue to represent them in the Damron/Hensley litigation.

{¶ 27} The trial court filed a written decision and order on October 20, 2008. The court found that Attorney Baran knew that Barnes was an employee of CSX and had investigated the collision from which the Damron/Hensley litigation arose, and that Attorney Baran did not obtain the permission of CSX's lawyers before speaking with Barnes. The court further found that Barnes's disability claim against CSX made them adversaries, that CSX would wish to impeach Barnes for bias on that basis should Barnes testify on behalf of the plaintiffs in the Damron/Hensley litigation, and therefore "[t]he employment relations dispute is related to the Damron case because it may provide a showing of bias against a witness in the Damron case."

{¶ 28} The court concluded that Attorney Baran had violated Prof.Cond.R. 4.2, which prohibits a lawyer from communicating with a person whom the lawyer knows is represented by another attorney in a matter, under certain circumstances, unless the lawyer has the permission of that person's legal representative. Relying on *Kitchen v. Aristech Chem.* (S.D.Ohio 1991), 769 F.Supp. 254, 258, the court held that Attorney Baran should therefore be disqualified from representing the plaintiffs in the Damron/Hensley litigation.

{¶ 29} The court further found that Attorney Baran should be disqualified from representing the plaintiffs because his conversations with Barnes also created a potential violation of Prof.Cond.R. 3.7. That rule provides that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness for his client unless one or more of three exceptions apply. In finding a potential violation of Prof.Cond.R. 3.7, the court first found that Attorney Baran's testimony concerning his conversations with Barnes would not be prohibited by the rule against hearsay, Evid.R. 802, because it would not be offered to prove the truth of the matter they discussed but to show that the alleged destruction of documents was not a subject they discussed. The court then made the following further finding:

{¶ 30} "In this case, Harold 'Bud' Barnes may testify that he saw a CSXT employee shredding photographs of the accident scene. This allegation is

vigorously denied by CSXT. CSXT in response will undoubtedly produce evidence of Barnes' employment dispute with CSXT as evidence of bias affecting his credibility. CSXT will also probably introduce evidence that Mr. Barnes did not make this allegation until after he had a phone conversation with Mark Baran. The inference will be created that Baran may have had something to do with the origination of the allegation. At that point, the Plaintiffs would want to call Mr. Baran to testify that he had nothing to do with Barnes' claim of destruction of evidence and the subject was not even discussed in his phone conversations with Mr. Barnes. So it is clear that Mr. Baran could well be in the position of being in the role of advocate and witness in the same case."

{¶ 31} The court granted CSX's motion to disqualify Attorney Baran and his law firm, Elk & Elk Co., L.P.A., from further representation of the plaintiffs in the Damron/Hensley litigation. The court denied CSX's motion to strike Attorney Baran's deposition of Bud Barnes because "[t]he evidence does not disclose that Mr. Baran and Mr. Barnes had extensive discussions regarding the train-truck collision. The evidence indicates that the bulk of their conversation was regarding Mr. Barnes' employment relations dispute. The evidence does not persuade one that it is likely the subject of destruction of evidence originated with Mr. Baran." The court further found that Attorney Baran had declined to represent Barnes in the employment-relations matter, and therefore that "[u]nder all the circumstances, striking Barnes' affidavit would be too severe a sanction for a modest breach of the rule that an attorney should not have contact with an adverse party without the knowledge and consent of that party's attorney."

{¶ 32} Plaintiffs filed a notice of appeal from the disqualification order. CSX filed a notice of cross-appeal.

Plaintiffs–Appellants' First Assignment of Error

{¶ 33} "The trial court abused its discretion in finding that defendant-appellee CSX's claims agent 'Bud' Barnes did not make an allegation of destruction of evidence by CSX until he had communication with plaintiffs-appellants' counsel Mark Baran when it is undisputed that Mr. Barnes told counsel for CSX about the shredded photographs *before* ever speaking with Mr. Baran."

Plaintiffs–Appellants' Second Assignment of Error

{¶ 34} "The trial court abused its discretion in finding that plaintiffs-appellants' counsel Mark Baran was likely to be a necessary witness for purposes of Rule 3.7 of the Ohio Rules of Professional Conduct since the evidence is undisputed that defendant-appellee's claim agent Mr. Barnes spoke with CSX counsel about the shredded photographs *before* ever speaking with Mr. Baran." (Emphasis sic.)

{¶ 35} Prof.Cond.R. 3.7, "Lawyer As Witness," states:

{¶ 36} "(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:

{¶ 37} "(1) the testimony relates to an uncontested issue."

{¶ 38} Official Comment 1 to Rule 3.7 states: "Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Official Comment 3 explains: "Division (a)(1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role will be purely theoretical."

{¶ 39} Prof.Cond.R. 3.7(a) does not render a lawyer incompetent to testify as a witness on behalf of his client. Rather, in this context, the rule functions to allow the court to exercise its inherent power of disqualification to prevent a potential violation of rules governing attorney conduct. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510 N.E.2d 379. In determining whether a lawyer can serve as both an advocate and a witness, a court must first determine the admissibility of his testimony without reference to the Disciplinary Rules. If the court finds the testimony admissible, and a party or the court moves for the attorney to withdraw or be disqualified, the court must then consider whether any exceptions to Prof.Cond.R. 3.7(a) apply to permit the attorney to both testify and continue representation. Id.; *155 N. High, Ltd. v. Cincinnati Ins. Co.* (1995), 72 Ohio St.3d 423, 650 N.E.2d 869.

{¶ 40} In making these determinations, the court must first identify what testimony the lawyer might offer in relation to a contested issue that would be necessary. The contested issue the trial court identified is the testimony of Barnes, whose testimony plaintiffs would offer to prove a spoliation-of-evidence claim. The court reasoned that because Barnes did not accuse CSX's employee, John Silver, of destroying photographs until *after* Barnes had spoken with Attorney Baran, CSX would wish to exploit that fact to impeach Barnes, on the suggestion that he was inspired by Attorney Baran to falsify the spoliation claim. The court reasoned that Attorney Baran's testimony for the plaintiffs would then be "necessary" for purposes of Prof.Cond.R. 3.7(a) in order to rebut the attack on Barnes's credibility, by denying that he and Barnes had discussed the spoliation claim.

{¶ 41} Both Attorney Baran and Barnes testified that they did not discuss spoliation of evidence and that their conversations prior to Barnes's deposition were limited to Barnes's disability claim. The trial court correctly found that Attorney Baran could testify that he and Barnes did not discuss spoliation of evidence without offending Evid.R. 802, because their testimony would not be offered to prove the truth of the matter they discussed. However, there is no

basis in the record to find, as the trial court also did, that because Barnes had spoken with Attorney Baran before Barnes reported his spoliation claim, Attorney Baran's testimony would be required to rebut a falsification claim by CSX.

{¶ 42} The record unequivocally shows that on the morning of March 24, 2007, Barnes reported his spoliation accusation to James Brockman, counsel for CSX who had inquired about photos the day before, and two other officials of CSX, and that only *after* those conversations did Barnes speak with Attorney Baran. On this record, therefore, any such suggestion of falsification by CSX implicating Attorney Baran would be objectionable for lack of an evidentiary foundation. Attorney Baran's testimony would not then be necessary for purposes of Prof. Cond.R. 3.7(a) in order to rebut a contrary suggestion. Indeed, the court's finding that Attorney Baran's testimony would be necessary for that purpose is contradicted by the court's other finding that "[t]he evidence does not persuade one that it is likely the subject of destruction of evidence originated with Mr. Baran."

{¶ 43} If and when the trial court grants the plaintiffs' motion to amend their complaint to add a spoliation-of-evidence claim to which Barnes will testify, CSX will likely exploit Barnes's unhappiness with CSX for its opposition to his claim in order to impeach Barnes for bias. Those matters are undisputed. Therefore, any testimony Attorney Baran might give concerning them would be within the exception of paragraph (1) of Prof.Cond.R. 3.7(a) in any event.

{¶ 44} The trial court erred when it disqualified Attorney Baran on a finding that he violated Prof.Cond.R. 3.7(a). Plaintiffs-appellants' first and second assignments of error are sustained.

Plaintiffs–Appellants' Third Assignment of Error

{¶ 45} "The trial court abused its discretion in finding that plaintiffs-appellants' counsel Mark Baran violated Rule 4.2 of the Ohio Rules of Professional Conduct."

{¶ 46} Prof.Cond.R. 4.2, "Communication with Person Represented By Counsel," states:

{¶ 47} "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

{¶ 48} Official Comment 1 to the Rule states:

{¶ 49} "This rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the

194

matter, interference by those lawyers with the client-lawyer relationship, and the uncounselled disclosure of information relating to the representation."

{¶ 50} Official Comment 4 to the Rule states:

{¶ 51} "This rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation.  For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter."

{¶ 52} When Attorney Baran spoke with Barnes on March 23 and 24, 2007, Barnes was a person within the coverage of Prof.Cond.R. 4.2 because of his employment by CSX and, more specifically, Barnes's participation in CSX's investigation of the fatal collision from which the Damron/Hensley litigation arose.  Attorney Baran and Barnes both testified, under oath, that they spoke only about Barnes's disputed disability claim against CSX.  After finding that "Mr. Baran would know nothing of the dispute between Barnes and CSX, that may affect Barnes' credibility, if not for an ex parte communication," the court reasoned that because their conversation was "about the credibility of a Damron case witness," Attorney Baran and Barnes therefore "communicated about the Damron case."

{¶ 53} Though as a matter it is collateral to the substance of a witness's testimony, the credibility of a witness who testifies at trial is always in issue. For that reason, a witness's credibility may be impeached by extrinsic evidence probative of the witness's bias, prejudice, interest, or motive to misrepresent. Evid.R. 616(A).  On this record, CSX would wish to impeach Barnes for bias by offering extrinsic evidence that CSX had opposed Barnes's disability claim and that Barnes is antagonistic toward CSX as a result, when and after Barnes testifies in support of a spoliation-of-evidence claim.

{¶ 54} The availability of extrinsic evidence to impeach a witness who testifies does not operate to bring the matter that evidence involves within the coverage of Prof.Cond.R. 4.2.  The matter must also be one within the subject of the lawyer's representation when he and the witness communicate.  Typically, extrinsic evidence used to impeach involves a matter outside that representation, being extrinsic to or "outside" the subject of the witness's testimony regarding the matter the lawyer's representation concerns.

{¶ 55} The subject of Attorney Baran's representation when he communicated with Barnes on March 23 and 24, 2007, was the Damron/Hensley litigation and the claims for wrongful death and survivorship against CSX that that action involves.  Barnes's disability claim and his dispute with CSX concerning it was a

matter manifestly outside the subject of Attorney Baran's representation when the two communicated. Their communication concerning Barnes's disability claim was therefore not prohibited by Prof.Cond.R. 4.2, and that rule is not implicated merely because CSX may offer extrinsic evidence concerning Barnes's disability claim to impeach his credibility if and when he testifies on behalf of plaintiffs concerning a spoliation-of-evidence claim.

{¶ 56} CSX regularly and persistently characterized Prof.Cond.R. 4.2 as a "no contact" rule, one that prohibits all contacts of any kind between an attorney and a represented person without the prior approval of that person's attorney. The contention misrepresents the rule, which does not prohibit contacts "concerning matters outside the representation." Official Comment 4. Nevertheless, and building on its argument, CSX insisted that "it is impossible for CSX to accept" that the communications between Attorney Baran and Barnes did not concern Barnes' spoliation allegation. At oral argument, counsel for CSX contended that to believe otherwise is "preposterous."

{¶ 57} CSX's problem is that the trial court declined to adopt CSX's view of the evidence, finding instead that Barnes's communications with Attorney Baran concerned a matter about which Barnes could be impeached for bias against CSX, which is his disability claim. By negative inference, the record demonstrates that the court rejected CSX's contention that the communications concerned spoliation. That is a finding of fact, to which we are bound to defer if it is supported by some competent, credible evidence. *Bryan–Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198. Competent evidence includes testimony from one who has personal knowledge of the matter for which testimony is elicited. Barnes and Attorney Baran testified that they did not discuss spoliation, and instead discussed Barnes's disability claim and only that. We therefore defer to the trial court's finding of fact that the two did not discuss spoliation.

{¶ 58} Our conclusion ought not be taken to endorse the view that Attorney Baran would have violated Prof.Cond.R. 4.2 even had the court found that he and Barnes discussed Barnes's spoliation allegations. A claim for relief alleging intentional spoliation of evidence constitutes a cause of action separate from the claims for relief to which the evidence would relate. *Smith v. Howard Johnson, Inc.* (1993), 67 Ohio St.3d 28, 615 N.E.2d 1037. Therefore, as a matter of law, it was outside the subject of Attorney Baran's representation in the Damron/Hensley litigation when he and Barnes communicated on March 23 and 24, 2007. Furthermore, it has been held that such allegations against CSX would place Barnes in a position adverse to CSX, so as to make Barnes no longer a "represented person" in the Damron/Hensley litigation for purposes of Prof. Cond.R. 4.2. *In re Emp. Discrimination Litigation Against Alabama* (Oct. 2,

2006), M.D.Ala. No. 2:94cv356–MHT, 2006 WL 2841081. Finally, we cannot endorse a view that the Rules of Professional Conduct ought be employed to the benefit of an alleged wrongdoer accused of committing an intentional tort. We take no position on whether Barnes's spoliation allegations are true or untrue, and we cannot. However, it would be a perversion of Prof.Cond.R. 4.2 to permit its use to shelter CSX from those allegations and/or to deny plaintiffs' right to representation by an attorney of their choice when the rule does not apply.

{¶ 59} As a final matter, neither do we endorse or condone Attorney Baran's untruthful response when he was asked by CSX's attorney, David Williamson, whether he and Barnes had communicated. Prof.Cond.R. 4.1 states: "In the course of representing a client a lawyer shall not *knowingly* * * * (a) make a false statement of fact or law to a third person." (Emphasis added.) Attorney Baran's denial that he and Barnes had communicated was a false statement, and Attorney Baran knew it was false. That falsehood gave CSX further cause to challenge Attorney Baran's conduct, and it probably colored the trial court's estimate of Attorney Baran's other conduct. However, we believe that in and of itself, the falsehood was not sufficiently material to the fairness of the trial proceeding to justify disqualification. The best outcome would be that a lesson was learned.

{¶ 60} Plaintiffs-appellants' third assignment of error is sustained.

Plaintiffs–Appellants' Fourth Assignment of Error

{¶ 61} "The trial court abused its discretion by disqualifying plaintiff-appellants' counsel Mark Baran and his employer Elk & Elk Co., L.P.A."

{¶ 62} This assignment of error is sustained for the reasons on which we relied in sustaining the previous assignments of error.

Defendant–Appellee's Cross–Assignment of Error

{¶ 63} "The trial court erred in not striking the deposition of Harold 'Bud' Barnes from the record."

{¶ 64} CSX argues that the trial court abused its discretion when it denied CSX's motion to strike the deposition of Barnes that Attorney Baran took, for several reasons.

{¶ 65} CSX argues that Attorney Baran's violations of Prof.Cond.R. 3.7 and 4.2 in his prior communications with Barnes tainted the deposition. Our finding that no violations occurred requires us to reject that contention.

{¶ 66} CSX argues that Attorney Baran acted improperly when he instructed Barnes during the deposition to answer questions concerning matters that counsel for CSX objected are privileged, on Attorney Baran's assertion that he and Barnes had formed an attorney-client relationship.

{¶ 67} Whatever Barnes told Attorney Baran in the course of their conversations concerning his disability claim could be subject to an attorney-client privilege. However, both parties have used that prospect as a red herring to draw attention from the claims of the other and bolster their own. The issue is whether Attorney Baran acted improperly because he instructed Barnes to divulge information privileged to CSX.

{¶ 68} CSX takes the position that anything Barnes was asked or said was privileged because of Barnes's employment relationship with CSX and his participation in CSX's investigations concerning the Damron/Hensley litigation. After stating that "[t]he video and transcript speak for themselves about Baran's actions at the deposition," CSX cites several places in the deposition transcripts where the alleged transgressions occurred. However, CSX has not made an argument in support of its contentions that demonstrate the error it assigns. App.R. 16(A)(7). We are not disposed to develop those arguments ourselves.

{¶ 69} CSX argues that because Barnes is a Kentucky resident and therefore beyond the subpoena power of the court, "[t]here is the very real possibility that Barnes' deposition transcript may be read into the record at trial, thereby permitting the taint of the proceeding to spread." That contention relies on Civ.R. 32(A)(3), but it assumes a taint that CSX has failed to demonstrate. In any event, in advance of any trial at which Barnes has failed to appear and his deposition is instead read, the argument is premature.

{¶ 70} CSX's cross-assignment of error is overruled.

Conclusion

{¶ 71} Having sustained plaintiffs-appellants' assignments of error, we reverse and vacate the trial court's order disqualifying Attorney Baran and remand the case for trial.

BROGAN, J., concurs.

DONOVAN, P.J., concurs in part and dissents in part.

DONOVAN, Presiding Judge, concurring in part and dissenting in part.

{¶ 72} I agree with the resolution of the first and second assignments of error. However, I disagree with the majority's disposition of Damron's third and fourth assignments of error, as well as defendant-appellee's cross-assignment of error. I would find that the trial court did not abuse its discretion when it found that Attorney Baran violated Prof.Cond.Rule 4.2 since he engaged in ex parte communications with Barnes, CSX's main field investigator ("MFI") assigned to the Damron case, and failed to initially disclose this to opposing counsel.

{¶ 73} It is undisputed that Attorney Baran communicated with Barnes on March 23 and 24, 2007. At the time of their communications, Barnes was employed by CSX as the MFI on the Damron case. The record clearly demonstrates that Baran did not have the consent of CSX's counsel to speak with Barnes, nor were such conversations immediately disclosed. Most important, Baran does not deny that the ex parte communications occurred. According to Baran, however, Barnes only called him to talk about his accident/benefits claim against CSX, and to find out whether Baran could represent him in the matter. Baran testified that once he became aware who he was speaking to, he informed Barnes that he would talk to him, but no mention could be made of any matter pertaining to the Damron case. Baran maintained that throughout the course of their conversations, Barnes never provided him with any information regarding the alleged destruction of evidence by CSX. Moreover, Baran emphasizes that he ultimately decided to forgo representation of Barnes.

{¶ 74} In holding that Baran violated Rule 4.2, the trial court correctly found that Barnes had an adversarial relationship with CSX. On one hand, Barnes was the acting MFI on the Damron case who had extensive knowledge of the case file and legal strategy to be employed by CSX. On the other hand, Barnes wanted to pursue a claim against CSX for benefits to which he believed he was entitled. When Baran and Barnes spoke for the first time on March 23, 2007, they were aware that they were both intimately involved with the Damron case.

{¶ 75} Even if Barnes and Baran limited their discussion to Barnes's claim against CSX (which was discounted by the trial court), Baran still should have understood that it would have been a conflict of interest for him, as co-counsel for Damron, to engage in a conversation with, let alone represent, Barnes, the MFI in the Damron case, in a civil action against CSX. Upon receiving the first call from CSX's agent, Baran should have ended the call as soon as possible and immediately contacted defense counsel and the trial court to inform them that he had been contacted by Barnes. This course of action would have avoided even the hint of impropriety. Instead, Baran engaged Barnes in a discussion that lasted almost an hour, and then spoke to him for an additional 15 minutes the next day. Even more suspect is the fact that Baran kept his communications with Barnes a secret from CSX and the trial court until well after Barnes had been deposed. Baran then was dishonest with opposing counsel twice when specifically asked whether he had any ex parte conversations with Barnes. Other disturbing aspects of this situation are that Baran named Barnes as an expert witness for the plaintiffs, and his assertion that he and Barnes had an attorney-client relationship with respect to Barnes's benefits claim against CSX.

{¶ 76} It is significant to note that the trial court found that Baran and Barnes had, in fact, discussed the Damron case as is evidenced by the following excerpt from its decision:

{¶ 77} "Considering all the evidence, it is reasonable to conclude that Mark Baran communicated about the Damron case, that is, about the credibility of a Damron case witness, with Mr. Baran knowing that Mr. Barnes was represented by Lindhorst and Dreidame in the Damron case and Mr. Baran did not have the consent of Lindhorst and Dreidame to communicate with Mr. Barnes. Mr. Baran was not authorized by law or court order to communicate with Mr. Barnes."

{¶ 78} This is a clear violation of Prof.Cond.R. 4.2.

{¶ 79} The majority correctly states that Prof.Cond.R. 4.2 allows communications between an attorney from one party and a "represented person" from an adverse party if the communication concerns a "separate matter" outside of the original litigation. The majority concludes that Baran and Barnes could, therefore, discuss Barnes's employment claim against CSX because it was a "separate matter" from the suit filed by plaintiffs against CSX regarding the accident which occurred on January 5, 2004. Even if Barnes and Baran only discussed the employment claim, Barnes, CSX's main investigator in the Damron case, was still seeking to bring suit against CSX, who was an adverse party to clients currently represented by Baran. Clearly, this is not a "separate matter" as contemplated by Official Comment 4 to Prof.Cond.R. 4.2. If Baran were attempting to represent Barnes in a suit against a third party who was unrelated in any way to the accident litigation, it would ostensibly be permissible for that representation to occur if all of the proper disclosures were made to the appropriate parties. In the instant case, however, a clear and unequivocal conflict existed that served to bar Baran from representing Barnes in any litigation against CSX. Baran's behavior in repeatedly concealing his communications with Barnes demonstrates that he understood that he was engaging in inappropriate and prohibited behavior.

{¶ 80} "When determining whether an attorney should be disqualified due to a violation of DR 7–104 [predecessor to Prof.Cond.R. 4.2], three competing interests must be considered: '1) the client's interest in being represented by counsel of its own choice; 2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and 3) the public's interest in the scrupulous administration of justice' * * *." *Kitchen v. Aristech Chem.* (S.D.Ohio 1991), 769 F.Supp. 254, 258.

{¶ 81} The majority states that "it would be a perversion of [Prof.Cond.R. 4.2] to permit its use to shelter CSX" from the allegations of evidence spoliation and as a means to "deny Plaintiffs' right to representation by an attorney of their choice when the Rule does not apply." Initially, it should be noted that the trial court's ruling disqualifying Baran for violating Prof.Cond.R. 4.2 in no way "shelters" CSX from Barnes's allegations of evidence spoliation. Nothing in the trial court's ruling prevents plaintiffs from questioning CSX regarding John

Silvers's alleged destruction of the photographs of the accident scene. The court's ruling simply prohibits Attorney Baran from conducting, or otherwise participating in, the questioning with respect to that topic.

{¶ 82} Moreover, it is important to note that the Damron plaintiffs can continue to be represented by John Smalley, the lawyer they originally retained in this case. The trial court found that Smalley was an experienced litigator with a great deal of trial experience in personal-injury cases. Baran's disqualification from continued representation will not result in any long-term prejudice to Damron's case. Other than his own assertions, Baran did not produce any evidence that clearly established that he possessed any special, or otherwise noteworthy, experience in regards to railroad litigation.

{¶ 83} The majority also suggests that the record establishes that CSX wanted to disqualify Attorney Baran simply because he was "tenacious." While there was some evidence that the CSX attorneys knew that Baran possessed a professional reputation for being a zealous advocate on behalf of his clients, the record establishes that the only reason CSX sought to have Baran disqualified was because he was found to have an improper relationship with Barnes.

{¶ 84} With respect to the second prong of the *Kitchen* test, I agree with the trial court that CSX's right to a trial free from the prejudice resulting from Baran's ex parte communications with Barnes clearly weighs in favor of Baran's disqualification. Baran's conduct created a conflict that compromised privileged communications between CSX, its employees, and its own counsel. CSX should not be forced to proceed when its own employee developed an attorney-client relationship with plaintiffs' counsel during the instant litigation.

{¶ 85} Lastly, the trial court's disqualification order supports the scrupulous administration of justice. Baran failed to comply with the mandate set forth in Prof.Cond.R. 4.2, and his lack of honesty and propriety was a clear basis upon which to disqualify and bar him from any further involvement in this case. The trial judge who observed Baran's testimony firsthand was in the best position to evaluate Baran's credibility and conduct.

{¶ 86} After a thorough review of the record, I would hold that it was reasonable to conclude that Baran's conduct in the instant case was a clear violation of Prof.Cond.R. 4.2; thus, the trial court did not abuse its discretion in disqualifying him on that basis. In concluding its discussion sustaining Damron's third assignment of error, the majority states that "the best outcome would be that a lesson was learned." It is unclear, however, what that lesson is. I am of the opinion that the better lesson is that the Rules of Professional Conduct will be vigilantly enforced.

{¶ 87} In light of the foregoing, I would affirm the ruling of the trial court and find that Baran violated Prof.Cond.R. 4.2; he should be disqualified on that basis, and the deposition of Barnes conducted by Baran should be stricken for that rule violation.