[Cite as *Luckett v. Ryan*, 2011-Ohio-2999.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

MARILYN L. LUCKETT,

    PLAINTIFF-APPELLANT,           CASE NO. 1-10-49

    v.

MARSHA P. RYAN,                  O P I N I O N
ADMINISTRATOR, BWC, ET AL.,

    DEFENDANTS-APPELLEES.

Administrative Appeal from Allen County Common Pleas Court
Trial Court No. CV090379

Judgment Affirmed

Date of Decision: June 20, 2011

APPEARANCES:

    *James C. Ayers* for Appellant

    *Hilla M. Zerbst and Catherine F. Lacho* for Appellee, CFA Staffing

    *Andrew J. Alatis* for Appellee, Admr., Ohio B.W.C.

**PRESTON, J.**

{¶1} Plaintiff-appellant, Marilyn L. Luckett (hereinafter "Luckett"), appeals the Allen County Court of Common Pleas' judgment adopting the jury's determination that she was not entitled to participate in the benefits of the Workers' Compensation Act for the additional condition of "closed head injury." For the reasons that follow, we affirm.

{¶2} On September 9, 2006, Luckett was struck in the back of her head with a box containing empty liquid laundry detergent bottles while working for C.F.A. Staffing, Inc. at the Proctor and Gamble distribution center in Lima, Ohio. (May17-18, 2010 Tr. at 99); (Doc. No. 2, Ex. A). The box that struck Luckett weighed two pounds, eight ounces (2.0 lbs. 8.0 oz.) and measured twelve inches (12") by eleven inches (11") by eight inches (8") by sixteen inches (16"). (May 17-18, 2010 Tr. at 157, 171).

{¶3} On September 11, 2006, Luckett filed claim no. 06-859138 with the Ohio Bureau of Workers' Compensation ("BWC") alleging that she suffered cervical sprain and a closed head injury as a result of the accident. (Doc. No. 28, Ex. 4); (P's Ex. 4). Luckett's claim was originally allowed for contusion of the scalp. (Doc. No. 2, Ex. A).

{¶4} On October 23, 2008, Luckett filed a motion with the BWC for the following additional allowances arising from her accident: (1) cervical

sprain/strain; (2) right shoulder sprain/strain; (3) thoracic sprain/strain; (4) lumbar strain/sprain; and (5) closed head injury. (Id.). On December 8, 2008, a District Hearing Officer allowed Luckett's additional claims for cervical, thoracic, and lumbar sprain/strain, and closed head injury, but disallowed her additional claim for right shoulder sprain/strain. (Id.).

{¶5} Both parties appealed the decision, and, on February 4, 2009, the Staff Hearing Officer affirmed the District Hearing Officer's additional allowances for cervical, thoracic, and lumbar strain/sprain, but disagreed with the additional allowance for closed head injury. (Doc. No. 2, Ex. B).

{¶6} On February 20, 2009, the Ohio Industrial Commission affirmed the Staff Hearing Officer's decision. (Doc. Nos. 1-2).

{¶7} On April 20, 2009, Luckett filed a notice of appeal and a complaint against the BWC Administrator and C.F.A., Inc. in the Allen County Court of Common Pleas pursuant to R.C. 4123.512. (Id.).

{¶8} On May 11, 2010, Luckett filed a motion in limine seeking to exclude from trial: the testimony of Drs. Neidhardt and Chavez concerning Luckett's other emergency room visits after the work-related injury; the medical records created as a result of these visits; and testimony concerning Luckett's previous medical history. (Doc. No. 24). Luckett argued that the testimony was irrelevant and the medical records were both irrelevant and inadmissible as hearsay. (Id.).

-3

{¶9} On May 14, 2010, the defendants filed a response to the motion in limine arguing that the testimony and medical records were relevant to whether or not Luckett has, in fact, suffered a closed head injury as she alleged. (Doc. No. 30). Defendants further argued that: Luckett's past medical history was relevant on the issue of causation; the medical reports were admissible since they were relied upon by the expert witnesses to formulate their opinions; and the testimony and records were relevant to Luckett's credibility and to impeach her based upon her bias, interest, or motive to lie given Luckett's alleged drug-seeking and symptom magnification behaviors. (Id.).

{¶10} On May 17, 2008, before the jury trial commenced, the trial court issued its orders on the depositions of Drs. Chavez and Neidhardt. (Doc. Nos. 31-32). That same morning before the jury trial commenced, the trial court ruled that: the ICD codes were inadmissible; Luckett's testimony was admissible; the extent of injury was admissible; the medical evidence presented to the experts was admissible; testimony concerning Luckett's possible drug-seeking and symptom magnification was admissible for impeachment purposes; and impeachment of the experts was admissible. (May 17-18, 2010 Tr. at 3).

{¶11} On May 17-18, 2010, the matter was presented to the jury, and, on May 18, 2010, the jury rendered its verdict, finding that Luckett was not entitled to

participate in the workers' compensation system for the additional condition of a closed head injury. (Doc. No. 35).

{¶12} On June 21, 2010, the trial court entered judgment upon the jury's verdict, and, thereafter, filed an amended judgment entry reflecting the same on July 8, 2010. (Doc. Nos. 37-38).

{¶13} On July 20, 2010, Luckett filed a notice of appeal. (Doc. No. 40). Luckett now appeals raising three assignments of error raising evidentiary matters, which we will combine for our analysis.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT COMMITTED ERROR TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT PERMITTED DEFENDANTS-APPELLEE [SIC] EXHIBITS, OVER OBJECTION, THAT WERE NEITHER AUTHENTICATED NOR RELEVANT TO THE ISSUES AND TO WHICH NO WITNESSES WERE CALLED TO TESTIFY AS TO THE TRUTHFULNESS OF THE MATTER WITHIN WHEREBY HEARSAY AND HEARSAY WITHIN HEARSAY WAS ADMITTED.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT COMMITTED ERROR TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT PERMITTED DEFENDANTS-APPELLEE [SIC], TO SOLICIT OPINIONS OF THEIR MEDICAL EXPERT WITNESS, JOSE CHAVEZ, M.D., OVER OBJECTIONS (105 OBJECTIONS OVERRULED), CONCERNING MATTER [SIC] WITHIN EXHIBITS NOS. B THROUGH W THAT WERE NEITHER AUTHENTICATED NOR RELEVANT TO THE ISSUES AND TO WHICH NO WITNESSES WERE CALLED TO TESTIFY**

**AS TO THE TRUTHFULNESS OF THE MATTER WITHIN; AND FURTHER PERMITTED DR. CHAVEZ TO INTERPRET AND PUT HIS SPIN ON THE HEARSAY AND HEARSAY WITHIN HEARSAY MATTER ALL OF WHICH WAS UNDULY PREJUDICIAL TO APPELLANT.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT COMMITTED ERROR TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT WHEN IT PERMITTED, OVER OBJECTIONS (36 OBJECTIONS OVERRULED), DEFENDANTS-APPELLEES' COUNSEL ON CROSS-EXAMINATION TO EITHER READ, OSTENSIBLY AS A QUESTION, OR REQUEST THAT DR. NEIDHARDT READ, OSTENSIBLY AS AN ANSWER TO A QUESTION, STATEMENTS FROM APPELLEES' EXHIBITS B THROUGH I, THAT WERE NEITHER AUTHENTICATED NOR RELEVANT TO THE ISSUES, AND TO WHICH NO WITNESSES WERE CALLED TO TESTIFY AS TO THE TRUTHFULNESS OF THE MATTER WITHIN; THEREBY INTRODUCING IRRELEVANT MATTER [SIC] AND HEARSAY STATEMENTS INTO THE RECORD THAT WERE UNDULY PREJUDICIAL TO APPELLANT.**

{¶14} In her three assignments of error, Luckett argues that the trial court erred by allowing several of her medical records and testimony regarding those medical records into evidence since: (1) the medical records were not properly authenticated; (2) the medical records and testimony related thereto was irrelevant; and (3) the medical records and testimony related thereto was inadmissible hearsay.

{¶15} As a preliminary matter, we note that, on January 13, 2011, Luckett filed a motion to withdraw her arguments related to the authenticity of the medical

records since the parties stipulated to their authenticity at trial. (App. Doc. No. 16); (May 17-18, 2010 Tr. at 162-65). On January 26, 2011, this Court granted the motion. (App. Doc. No. 19). Despite the parties' stipulation to the authenticity of the medical records, Luckett argued in the trial court that the medical records and testimony related thereto was inadmissible on relevancy and hearsay grounds. Therefore, our review of the three assignments of error will be limited to the issues of relevancy and hearsay.

{¶16} "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is generally admissible. Evid.R. 402. Relevant evidence may be excluded pursuant to Evid.R. 403:

> **(A) Exclusion mandatory**
> **Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.**
>
> **(B) Exclusion discretionary**
> **Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.**

{¶17} Hearsay evidence is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The Ohio Rules of Evidence

forbid the use of hearsay evidence at trial absent a recognized exception. Evid.R. 802. Evid.R. 803 sets forth certain exceptions to the hearsay rule, and provides in relevant part, as follows:

> **The following are not excluded by the hearsay rule, even though the declarant is available as a witness:**
>
> **(4)** *Statements for purposes of medical diagnosis or treatment.* **Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.**
>
> \* \* \*
>
> **(6)** *Records of regularly conducted activity.* **A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(1), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.**

"'Evid.R. 803(6) does not preclude the admissibility of opinions or diagnoses contained in medical records or reports as long as they satisfy the foundational authentication requirements of Evid.R. 803(6) and do not violate other evidentiary rules (e.g. R.C. 2317.02(B); Evid.R. 402 and Evid.R. 702).'" *Wasinski v. PECO II,*

*Inc.*, 3d Dist. Nos. 3-08-14, 3-08-16, 2009-Ohio-2615, ¶20, quoting *Smith v. Dillard's Dept. Stores, Inc.*, 8th Dist. No. 75787, 2000-Ohio-2689.

**{¶18}** R.C. 2317.40, Evid.R. 803(6)'s statutory equivalent, was enacted to "'liberalize and broaden the shop-book rule, recognized at common law as an exception to the general rule excluding hearsay evidence, and to permit the admissions of records regularly kept in the course of business.'" *Smith*, supra, quoting *Weis v. Weis* (1947), 147 Ohio St. 416, 72 N.E.2d 245. Additionally, in *Weis*, the Supreme Court of Ohio stated, in relevant part:

> **[T]hose portions of hospital records made in the regular course of business and pertaining to the business of hospitalization and recording observable acts, transactions, occurrences or events incident to the treatment of a patient are admissible, in the absence of privilege, as evidence of the facts therein recorded, insofar as such records are helpful to an understanding of the medical or surgical aspects of the case, provided such records have been prepared, identified and authenticated in the manner specified in the statute itself. (Citations omitted).**
>
> **Such a hospital or physician's office record may properly include case history, diagnosis by one qualified to make it, condition and treatment of the patient covering such items as temperature, pulse, respiration, symptoms, food and medicines given, analysis of the tissues or fluids of the body and the behavior of and complaints made by the patient. (Citations omitted).**

147 Ohio St. at 424-25.

**{¶19}** A trial court has broad discretion to determine whether to admit or exclude evidence. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d

1291. As such, we will not disturb the trial court's decision on that issue unless the trial court abused its discretion. Id. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶20} With these applicable rules in mind, we turn to the medical records at issue in this case. Dr. Neidhardt, the St. Rita's Emergency Room physician who treated Luckett on November 11, 2006 and diagnosed her with a "closed head injury," identified exhibits B, C, D, E, and F as CT scan reports for Luckett dated 11/02/06, 12/5/06, 4/10/08, and 7/30/08. (Neidhardt Depo. at 5-8, 21-28); (May 17-18, 2010 Tr. at 133). Dr. Neidhardt testified that each of these CT scans were "normal" or "unremarkable," meaning "that the radiologist could not see anything on the x-ray image that seemed out of the ordinary." (Neidhardt Depo. at 21-31). Neidhardt further testified that exhibits B, C, D, E, and F were true and accurate copies kept in the ordinary course of business. (Id. at 29). Contrary to Luckett's arguments, we find that these exhibits were relevant to whether or not Luckett suffered a closed head injury on September 9, 2006 as a result of her workplace injury. Furthermore, since the record contains testimony from a qualified witness that the CT scans were true and accurate copies kept in the ordinary course of business, we cannot conclude that the trial court abused its discretion by allowing the CT scans to be admitted as business records under Evid.R. 803(6).

-10-

{¶21} Exhibits K through W were several of Luckett's medical records, including: progress records indicating her treatment for her workplace injuries (K, L, M, N, & T), various emergency room visits (P, Q, V, & W), a visit to an eye center (U), and physician peer review reports (O & R). Upon review of the record, we cannot conclude that the trial court abused its discretion in admitting the above exhibits since they were offered for impeachment purposes under Evid.R. 616(A) and contained, in large part, admissions and statements made for purposes of medical treatment, admissible pursuant to Evid.R. 801(D)(2), 803(4).

{¶22} "[T]he credibility of a witness who testifies at trial is always in issue. For that reason, a witness's credibility may be impeached by extrinsic evidence probative of the witness's bias, prejudice, interest, or motive to misrepresent." *Damron v. CSX Transp., Inc.*, 184 Ohio App.3d 183, 2009-Ohio-3638, 920 N.E.2d 169, ¶53, citing Evid.R. 616(A). Dr. Neidhardt testified that his diagnosis of a closed head injury was dependent upon Luckett's truthfulness in relating her medical history. (May 17-28, 2010 Tr. at 138). Dr. Chavez testified that he examined Luckett, and she demonstrated "significant symptom magnification," meaning "that a number of complaints that she presented or exhibited were not consistent with the objective findings," and that Luckett's medical records exhibited her "drug seeking behavior." (May 17-18, 2010 Tr. at 188, 205). Exhibits O, R, and U were admitted to demonstrate Luckett's symptom

magnification, and therefore, admissible under Evid.R. 616(A). Several of the medical records admitted into evidence demonstrated that Luckett continuously requested narcotics for pain treatment, refused non-narcotics and clinical pain therapy, and missed several appointments for therapy and treatment. For example, Dr. Raza noted in his August 29, 2008 report that Luckett visited the emergency room complaining of a headache, and "[a]t the time of exam, [Luckett] state[d] she wants Vicodin or Percocet and probably would rather have Percocet." (Ex. H). Dr. Raza further notes that Luckett has been seen for the same thing by Dr. Tucker on 07/17/08, 08/12/08, and for chronic pain on 06/30/08. (Id.). Dr. Raza indicated in his report that Luckett "repeatedly asked me to write her for Vicodin and Percocet. To me it is suspicious behavior. The patient does have a chronic history of this and I have seen her in the past for the same thing. I decided not to do any work up at this time." (Id.). The report further indicated that Luckett expressed her displeasure with Dr. Raza's decision not to prescribe these medications to hospital staff, and that Luckett left without taking the non-narcotic medication Dr. Raza prescribed. (Id.). Similarly, Luckett expressed her desire to have another physician during her October 12, 2008 emergency room visit when the attending physician similarly refused to prescribe her narcotics. (Ex. I). Exhibits H and I were both admitted into evidence without objection. (May 17-18, 2010 Tr. at 289). These exhibits were admissible pursuant to Evid.R. 616(A) for purposes of

-12

impeaching Luckett on the basis of her motive to misrepresent, and these exhibits contained statements made for purposes of medical treatment admissible under Evid.R. 803(4). Exhibits M, N, P, Q, R, T, V, and W were admissible for these same reasons. Furthermore, any error with regard to the trial court's admission of exhibits M, N, P, Q, R, T, V, and W would be harmless since these exhibits were merely cumulative of evidence in exhibits H and I entered into evidence without objection. See, e.g., *Peffer v. Cleveland Clinic*, 8th Dist. No. 94356, 2011-Ohio-450, ¶28.

{¶23} Several other medical reports also contained statements Luckett made to medical providers for purposes of medical treatment, admissible under Evid.R. 803(4), that were inconsistent with her testimony at trial concerning how the injury occurred. For example, Luckett testified at trial that the box struck the right side of her head, but Luckett reported a "left-sided headache" to Dr. Young a couple days after the injury. (May 17-18, 2010 Tr. at 109); (Ex. K). Additionally, the medical records indicated that Luckett informed Dr. Young that she never lost consciousness as a result of the injury, but Luckett testified at trial that she was "knocked out" and a co-worker "came over and got [her] off the floor and was waking [her] up and slapping [her], waking [her] up * * *." (May 17-18, 2010 Tr. at 100); (Ex. K). The medical records further contained notations indicating that Luckett was released for work with restrictions, and that she was aware of this

-13

fact, despite Luckett's testimony at trial that she was "unsure" whether she was released for work. (May 17-18, 2010 Tr. at 109); (Exs. K, L). Aside from much of this evidence in these exhibits being admissible under Evid.R. 803(4) as statements Luckett made for purposes of medical treatment, the evidence within these exhibits was also relevant to impeach Luckett's testimony under Evid.R. 616(A). Furthermore, exhibit K—admitted for the purpose of impeaching Luckett's testimony that she lost consciousness—was merely cumulative, and therefore harmless error at most, since both Dr. Neidhardt and Dr. Chavez testified that Luckett informed them that she had not lost consciousness as a result of the injury. (May 17-18, 2010 Tr. at 137, 186).

{¶24} Finally, Luckett argues that the trial court committed plain error by allowing exhibits B through I into evidence. We disagree. We have already concluded that exhibits B, C, D, E, and F, Luckett's CT scan reports, were admissible under Evid.R. 803(6). With regard to exhibits H and I, we have already concluded that these exhibits were admissible under Evid.R. 616(A), 803(4), and we find that exhibit G is similarly admissible. As such, we cannot find plain error with regard to the trial court's admission of these exhibits or admission of testimony related to the exhibits.

{¶25} Luckett's three assignments of error are, therefore, overruled.

**{¶26}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J. and SHAW, J., concur.**

**/jlr**