[Cite as *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 2018-Ohio-4782.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106714**

**RAYCO MANUFACTURING, INC.**

PLAINTIFF-APPELLANT/
CROSS-APPELLEE

vs.

**MURPHY, ROGERS, SLOSS & GAMBEL, A PROFESSIONAL LAW CORPORATION, ET AL.**

DEFENDANTS-APPELLEES/
CROSS-APPELLANTS

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-815844

**BEFORE:** E.A. Gallagher, A.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** November 29, 2018

**ATTORNEYS FOR APPELLANT/CROSS-APPELLEE**

Robert D. Kehoe
Kevin P. Shannon
Kehoe & Associates, L.L.C.
900 Baker Building
1940 East Sixth Street
Cleveland, Ohio 44114

J. Douglas Drushal
Andrew P. Lycans
Critchfield, Critchfield & Johnston Ltd.
P.O. Box 599
225 N. Market Street
Wooster, Ohio 44691

Steven J. Shrock
Critchfield, Critchfield & Johnston Ltd.
138 E. Jackson Street
Millersburg, Ohio 44654

**ATTORNEYS FOR APPELLEES MURPHY, ROGERS, SLOSS & GAMBEL, A PROFESSIONAL LAW CORPORATION, ROBERT H. MURPHY, PETER B. SLOSS, GARY J. GAMBEL AND DONALD R. WING**

Ernest E. Vargo
Michael E. Mumford
Baker & Hostetler, L.L.P.
127 Public Square, Suite 2000
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES/CROSS-APPELLANTS CAVITCH, FAMILIO & DURKIN CO., L.P.A., DOUGLAS A. DIPALMA, MICHAEL C. COHAN AND ERIC J. WEISS**

Timothy Brick
Gallagher Sharp L.L.P.
Sixth Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115

Steven D. Strong
Gallagher Sharp L.L.P.

35 North Fourth Street
Suite 200
Columbus, Ohio 43215


EILEEN A. GALLAGHER, A.J.:

{¶1} Plaintiff-appellant/cross-appellee Rayco Manufacturing, Inc. ("Rayco") appeals from the trial court's decision granting defendants-appellees/cross-appellants' (collectively, "appellees")[1] motion to enforce a settlement agreement that resolved legal malpractice claims Rayco had filed against appellees. Rayco contends that the trial court erred in finding that there was an enforceable settlement agreement. In their cross-appeal, appellees contend that the trial court erred in denying their request to recover the attorney fees they incurred to enforce the settlement agreement. For the reasons that follow, we affirm the trial court's decision to the extent that it grants appellees' motion to enforce the settlement agreement, reverse the trial court's decision to the extent that it denies appellees' motion for attorney fees and remand the case for further proceedings.

**Factual Background and Procedural History**

{¶2} In October 2013, Rayco filed a complaint against appellees for legal malpractice arising out of appellees' handling of a prior lawsuit Rayco had filed against Deutz Corporation and Deutz AG (collectively, "Deutz") for breach of warranty and other claims arising out of Deutz's sale of engines to Rayco. In that case, summary judgment was granted in favor of Deutz and affirmed by the United States Court of Appeals for the Sixth Circuit.

---

[1]Defendants-appellees/cross-appellants consist of Murphy, Rogers, Sloss & Gamble, A Professional Law Corporation; Robert H. Murphy, Peter B. Sloss, Gary J. Gambel and Ronald R. Wing (collectively, "Murphy"); Cavitch, Familo & Durkin Co., L.P.A., Douglas DiPalma, Michael C. Cohan and Eric J. Weiss (collectively, "Cavitch").

**{¶3}** In February 2015 and June 2016, the parties attempted to mediate their dispute with the assistance of a retired judge as the mediator. At the second mediation, Rayco authorized the mediator to convey a settlement demand of $3,050,000, in the aggregate, to appellees. At the conclusion of the second mediation, no agreement had been reached but efforts to settle the case continued.

**{¶4}** In July 2016, the mediator issued a written recommendation to the parties, recommending that they settle the case for $2,650,000 in the aggregate. Rayco's counsel advised the mediator that Rayco did not agree with the recommendation and that appellees would have to pay the full $3,050,000 it had demanded to settle the case. In September 2016, with the consent of all parties, the mediator met with Rayco's chief executive, John Bowling, to further discuss the possibility of resolving the case. After the meeting, the mediator continued to have settlement discussions with Rayco and its counsel by telephone.

**{¶5}** In the fall of 2016, several pretrial conferences were cancelled at the parties' request due to ongoing settlement negotiations. During this time period, one of Rayco's attorneys, Robert Kehoe, had discussions with appellees' counsel in which he reiterated that the only way to settle the case would be to pay Rayco's full settlement demand of $3,050,000. Given the amount of the demand, appellees needed to request additional authority from their insurance carriers to settle the case. To that end, in late 2016, Murphy's counsel and Cavitch's counsel separately requested written settlement demands from Rayco that they could submit to their insurance carriers. In January 2017, Cavitch's counsel emailed Attorney Kehoe inquiring about the status of the "demand letter" from Rayco. Attorney Kehoe replied that he was "working on it."

**{¶6}** On January 26, 2017, Attorney Kehoe sent letters to Murphy's counsel and Cavitch's counsel. He indicated that he was writing "to follow up on the June 23, 2016 mediation and

subsequent settlement discussions with [appellees' counsel] and the mediator." He stated that Rayco had authorized the mediator to convey a "firm demand" of $3,050,000 to settle the case and had "made it clear" that "$3,050,000 was an absolute aggregate amount necessary to settle the case." He further indicated that "[w]e have not explored the possibility of resolving Rayco's claims against [the Murphy and Cavitch appellees] independent[ly]" but that there was "enough insurance coverage" for appellees "[i]n combination" to "meet Rayco's demand."

{¶7} At a pretrial conference on January 30, 2017, the parties advised the trial court that settlement negotiations were ongoing. A month later, on February 23, 2017, one of Murphy's attorneys, Ernie Vargo, with the consent of Cavitch's counsel, sent an email to Rayco's counsel, stating as follows:

> This is in response to Rayco's offer of settlement as set forth in your letter of January 26, 2017 to me. Counsel for Cavitch indicates that he has received a substantively similar letter on behalf of the Cavitch firm and named attorneys.
>
> The Murphy firm, Cavitch firm, and named lawyers from each firm accept the collective settlement demand of $3,050,000 in the aggregate. This acceptance is conditioned upon a full release and dismissal and other customary provisions to be negotiated and memorialized in a formal settlement agreement. Defendants agree to provide the initial draft of the written agreement to you for comments. Please expect the draft within 14 days of this email.
>
> Thank you for your efforts in negotiating this resolution with us.

{¶8} Later that day, Attorney Kehoe responded to the email. He left a voicemail message for Attorney Vargo, thanking him and requesting that he return his call, indicating, "I'd like to talk to you briefly about the logistics and I note that you'll take the first cut at the settlement documents and have them in about 14 days, which is fine." The following day, another of Rayco's attorneys, J. Douglas Drushal, emailed Attorney Vargo. He thanked Attorney Vargo for his February 23,

2017 email and stated that "[i]f he has not done so yet, [Attorney Kehoe] will be in touch shortly with how we would like to proceed to finalize things."

{¶9} On March 2, 2017, Attorney Drushal emailed appellees' counsel, stating, "I believe we are waiting for the final versions of what your side wants signed in the way of releases, etc. before presenting the package to Rayco. We need to know every detail before we can finalize. Anything you could do to expedite that would be helpful. Thanks."

{¶10} On March 7, 2017, Murphy's counsel emailed "defendants' draft settlement agreement and release" to Rayco's counsel. Murphy's counsel also inquired whether the parties should notify the court that they had "an agreement in principle" given that a pretrial conference was scheduled with the trial court for the following day. Attorney Drushal responded: "Agree that we should contact [the] court and say we don't need the conference. I will defer to the rest of you to coordinate that, assuming all others concur." The trial court cancelled the March 8, 2017 pretrial conference at the parties' request.

{¶11} On March 10, 2017, Attorney Kehoe forwarded a red-lined version of the settlement agreement "with suggested changes from Plaintiff's counsel" along with a proposed dismissal entry. The suggested changes included a mutual release provision, i.e., in addition to Rayco's release of its claims against Murphy and Cavitch, Murphy and Cavitch would release any claims they had against Rayco, and a provision that the trial court would retain jurisdiction over any disputes related to the settlement agreement. Attorney Kehoe stated: "Kindly review and let us know if [the suggested changes] are acceptable. If so, we will proceed to obtain our client's signature."

{¶12} Appellees' counsel made additional changes to the revised settlement agreement circulated by Rayco's counsel and sent a red-lined version of the document to Rayco's counsel on March 16, 2017.[2]

{¶13} On April 4, 2017, Attorney Kehoe left a voicemail message for Attorney Vargo. He indicated that "[t]he settlement document itself is fine" and that "[w]e had John [Bowling's] commitment to settle with the number that we agreed upon, but he's being a little bit difficult in getting the document signed."

{¶14} Rayco never signed the settlement agreement.

{¶15} On June 16, 2017, appellees filed a motion to enforce the settlement agreement. Appellees asserted that the parties had agreed to settle the case on February 23, 2017 but that Rayco refused to sign the settlement agreement. Appellees requested that the court enforce the settlement agreement and award them the attorney fees they incurred to enforce the settlement agreement.

{¶16} Rayco opposed the motion. It argued that there was no settlement agreement because, by the time appellees "accepted" the $3,050,000 settlement offer Rayco made at the June 2016 mediation, it had lapsed. Rayco further argued that its counsel's January 26, 2017 letters simply summarized the parties' past settlement positions and indicated Rayco's "willingness to re-open negotiations" and were not settlement offers.

---

[2]All drafts of the settlement agreement exchanged between the parties, including the "final" version of the settlement agreement, included a "costs" provision that stated, "[t]he Parties shall bear their own costs, expenses, and attorney fees in connection with this agreement," and a "specific performance" provision that stated, "[t]he Parties agree that, in the event of a breach of the terms of this Agreement, there will be no adequate remedy at law to remedy such breach and, accordingly, the Parties agree that specific performance may be awarded to enforce the terms of this Agreement."

{¶17} The trial court held an evidentiary hearing on the motion to enforce the settlement. The hearing was held before an advisory jury, which the trial court empaneled, sua sponte, to address the issue of "whether the parties entered into a contract to settle the lawsuit."

{¶18} Attorney Vargo (one of Murphy's attorneys), Attorney Timothy Brick (one of Cavitch's attorneys), and two of Rayco's attorneys, Attorneys Kehoe and Drushal, testified at the hearing. The parties also submitted a joint stipulation of undisputed facts. The 38 facts to which the parties stipulated detailed the history of the parties' settlement negotiations and included 15 documents created or exchanged by the parties during the course of their settlement negotiations.[3]

{¶19} During their testimony, Attorneys Vargo and Brick "walked through" the parties' stipulations and incorporated exhibits. Appellees argued there were at least three potential "offers" and three potential "acceptances" that gave rise to an enforceable settlement agreement. Appellees argued that Rayco's counsel's January 26, 2017 letters to appellees' counsel constituted offers that appellees accepted by means of Attorney Vargo's February 23, 2017 email to Rayco's counsel. They argued that the subsequent conduct of counsel, i.e., exchanging drafts of the settlement agreement, constituted further evidence of the parties' agreement to settle the case. Alternatively, appellees argued that (1) Murphy's counsel's February 23, 2017 email constituted a counteroffer to settle the case for $3,050,000 that Rayco accepted (a) by means of Attorney Kehoe's voicemail message to Attorney Vargo later that day or (b) by means of the email Attorney Drushal sent to Attorney Vargo the following day or (2) Rayco's counsel submission of the revised

---

[3] Prior to the hearing the parties filed a joint motion for leave to file a stipulation of undisputed facts regarding appellees' motion to enforce the settlement agreement. In their joint motion, the parties asserted that there were no disputed questions of material fact relevant to the motion to enforce the settlement agreement, that an advisory jury was no longer necessary and that "[t]he sole remaining question is whether the undisputed facts give rise to a binding settlement agreement as a matter of law." The trial court denied the motion.

settlement agreement (which included mutual releases and other changes) to appellees' counsel on March 10, 2017 constituted an offer to settle the case for $3,050,000 that appellees accepted on March 16, 2017, when they made additional changes to the revised settlement agreement and returned the document to Rayco's counsel.

{¶20} Attorney Kehoe testified upon cross-examination. He acknowledged the "tru[th] and accura[cy]" of the facts set forth in the parties' joint stipulation and confirmed that he was authorized to enter into the stipulation on behalf of Rayco. He indicated that he sent the January 26, 2017 letters to appellees' counsel in response to their request for a written settlement demand and that Rayco had authorized him to send the letters. He further acknowledged receipt of Attorney Vargo's February 23, 2017 email, indicating that appellees agreed to pay the amount Rayco had demanded ($3,050,000 in the aggregate), that he understood the email was sent on behalf of both Murphy and Cavitch and that he and appellees' counsel thereafter exchanged various emails congratulating and thanking one another for "working so hard to get this done." Attorney Kehoe testified that after he received Attorney Vargo's February 23, 2017 email, he reported the settlement to Bowling. He indicated that Bowling accepted his congratulations on the settlement and did not dispute that the case had been settled or object to the settlement at that time. He further testified, however, that when Bowling was presented with the settlement documents, he was "unwilling to sign" them. According to Attorney Kehoe, Bowling told him that he believed the settlement of the lawsuit was like a real estate transaction, i.e., that the deal was not finalized and there was no settlement until he signed the written settlement agreement. Attorney Kehoe further testified, however, that he had fully intended to consummate a settlement through his communications with appellees' counsel.

**{¶21}** Attorney Drushal testified that he interpreted his co-counsel's January 26, 2017 letters not as a "renewed demand" or "offer that could be accepted" but rather, as a "recitation of the history of what had happened" and "as seeking an offer from the lawyers, law firms, and their insurance company which would be presented to Mr. Bowling to see if he would accept it at that point." He further testified that, as he communicated in his March 2, 2017 email, in his view, "everybody needed to sign off on" the final version of the agreement before the parties had a settlement.

**{¶22}** After the parties concluded their presentation of evidence and gave closing arguments, the advisory jury deliberated. Six interrogatories were submitted to the advisory jury. The advisory jury answered interrogatories indicating that the parties had entered into a settlement agreement and signed a verdict form in favor of appellees and against Rayco on the motion to enforce the settlement agreement.[4]

**{¶23}** After dismissing the jury, the trial court stated that "[b]ased upon the evidence hearing and having taken into consideration or under consideration the jury's verdict in this case, I find that the motion to enforce the settlement is well taken."

**{¶24}** On December 14, 2017, the trial court issued a written decision granting appellees' motion to enforce the settlement agreement. The trial court determined, "[b]ased upon all the evidence," that the parties had "a contract to settle with terms clear and enforceable," as a result of

---

[4] One of the trial court's November 9, 2017 journal entries states: "The jury answered interrogatories to the effect that the parties did enter into an enforceable settlement agreement and signed a verdict form in favor of the defendants." The interrogatories submitted to the advisory jury, the advisory jury's answers to those interrogatories and the jury's signed verdict form were not included in the record this court received on appeal. And the jury's answers to the interrogatories were not read into the record. Accordingly, we do not know what specific findings were made by the advisory jury.

Rayco's "acceptance" of appellees' February 23, 2017 "offer" to settle the case for $3,050,000. As the trial court explained:

> In this case, on February 23 the defendants unambiguously offered the plaintiff a settlement of $3,050,000 in exchange for a dismissal of all claims against all defendants. The plaintiff — through counsel but with the authority of Rayco's chief executive — accepted that offer as shown by trial counsel's February 23 voicemail and as further evidenced by: 1) plaintiff's co-counsel's email that same day, 2) the plaintiff's March 10 proposed release of all claims leaving the figure of $3,050,000 undisturbed and 3) the plaintiff's confirmation on April 4 that "the settlement document (release dated March 16 and drafted by the defendants) is fine" and that Bowling had previously accepted the proffered settlement.

The trial court ordered the parties to "conclude the settlement under the terms outlined in the March 16, 2017, written settlement agreement."

**{¶25}** The trial court, however, denied appellees' request to recover the attorney fees they had incurred to enforce the settlement agreement based on the "American rule," i.e., that each party to a lawsuit is responsible for its own attorney fees unless they agreed otherwise, had a statutory entitlement to attorney fees or the other party acted in bad faith. Because the parties did not agree to shift fees, because there was no applicable statute providing for the recovery of attorney fees and because there was "insufficient evidence of the reasons for, and nature of, Bowling's resistance to finalizing the settlement" to support a finding that Rayco acted in bad faith by refusing to finalize the settlement, the trial court held that appellees were not entitled to recover the attorney fees they incurred in enforcing the settlement agreement.

**{¶26}** Rayco appealed, raising the following three assignments of error for review:

I. The trial court erred in finding that there was an enforceable settlement agreement entered into by the parties.

II. The trial court erred by permitting appellees' counsel to testify in violation of the witness advocate rule.

III. The trial court erred in applying a preponderance of the evidence standard to determine whether there was an enforceable settlement agreement.

{¶27} Murphy and Cavitch cross-appealed, raising the following single assignment of error for review:

Whether the trial court erred as a matter of law when it failed to award appellees reasonable attorney fees incurred to enforce the settlement agreement.

{¶28} For ease of discussion, we address Rayco's assignments of error out of order.

**Law and Analysis**

**Motion to Enforce Settlement Agreement**

**Standard of Review**

{¶29} The standard of review applied when reviewing a ruling on a motion to enforce a settlement agreement depends on the question presented. If the question is a factual or evidentiary one, the reviewing court will not overturn the trial court's finding if there was sufficient evidence to support the finding. *Turoczy Bonding Co. v. Mitchell*, 8th Dist. Cuyahoga No. 106494, 2018-Ohio-3173, ¶ 15, citing *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist.2000). If the issue is a question of contract law, the reviewing court must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. *Turoczy* at ¶ 15. Rayco raises both factual and legal issues in its appeal.

**Requirements for an Enforceable Settlement Agreement**

**{¶30}** A settlement agreement_is a contract designed to terminate a claim by preventing or ending litigation. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Like any other contract, it requires an offer, acceptance, consideration and mutual assent between two or more parties with the legal capacity to act. *See, e.g., Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16; *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997). For a contract to be enforceable, there must be a "meeting of the minds" as to the essential terms of the agreement. *Kostelnik* at ¶ 16-17. The essential terms of the agreement must be "'reasonably certain and clear'" and mutually understood by the parties. *Id.,* quoting *Rulli* at 376. As the Ohio Supreme Court explained in *Rulli*:

> "A court cannot enforce a contract unless it can determine what it is. * * * [The parties] must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are."

*Rulli*, at 376, quoting 1 *Corbin on Contracts,* Section 4.1, at 525 (Rev.Ed.1993). The burden of establishing the existence and terms of a settlement agreement lies with the party who claims its exists. *Turoczy* at ¶ 19, citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726 (2d Dist.1998).

**{¶31}** Once a settlement offer has been accepted, the settlement agreement is mutually binding; the settlement agreement cannot be set aside simply because one of the parties later changes its mind. *See, e.g., Turoczy* at ¶ 18 ("Once there is * * * a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind."), citing *Mack v. Polson Rubber Co.*, 14 Ohio St.3d 34, 36-37, 470 N.E.2d 902 (1984); *Clark v. Corwin*, 9th Dist. Summit

No. 28455, 2018-Ohio-1169, ¶ 13 ("'[W]hen the parties agree to a settlement offer, [the] agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement_and to enforce the settlement."); *Kostelnik*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 17 ("'[A]ll agreements have some degree of indefiniteness and some degree of uncertainty'"; however, "'people must be held to the promises they make.'"), quoting 1 *Corbin on Contracts*, Section 4.1 at 530 (Perillo Rev.Ed.1993). It is only where the parties intend that there will be no contract until the agreement is fully reduced to writing and executed that no settlement exists unless the final, written settlement agreement is signed by all of the parties. *PNC Mtge. v. Guenther*, 2d Dist. Montgomery No. 25385, 2013-Ohio-3044, ¶ 15. If a client authorizes its attorney to negotiate a settlement and the attorney negotiates a settlement within the scope of that authority, the client is bound by it. *See, e.g., Bromley v. Seme*, 2013-Ohio-4751, 3 N.E.3d 1254, ¶ 25 (11th Dist.) (" 'It is well-recognized that a party may be bound by the conduct of his or her attorney in reaching a settlement."), quoting *Saylor v. Wilde*, 11th Dist. Portage No. 2006-P-0114, 2007-Ohio-4631, ¶12. A party cannot avoid a settlement that was negotiated through counsel by claiming that his attorney lacked actual authority to enter into the settlement. *See, e.g., Fugo v. White Oak Condominium Assn.*, 8th Dist. Cuyahoga No. 69469, 1996 Ohio App. LEXIS 2725, 8-12 (June 27, 1996); *Klever v. Stow*, 13 Ohio App.3d 1, 4-5, 468 N.E.2d 58 (9th Dist.1983); *see also Argo Plastic Prods. Co. v. Cleveland*, 15 Ohio St.3d 389, 392-393, 474 N.E.2d 328 (1984).

**The Existence of an Enforceable Settlement Agreement**

**{¶32}** In its first assignment of error, Rayco contends that the trial court erred in finding that the parties entered into an enforceable settlement agreement because (1) the $3,050,000 settlement offer Rayco made at the June 2016 mediation had lapsed by the time appellees

purported to accept it and (2) its counsel's January 26, 2017 letters simply indicated Rayco's "willingness to re-open negotiations" and were not sufficiently "certain and clear regarding the settlement terms" to constitute a valid settlement offer. Rayco asserts that these letters simply summarized the parties' past settlement positions and made it clear that Rayco was still willing to consider settlement rather than specifying the terms upon which Rayco would settle the case. Rayco further contends that the letters could not be deemed settlement offers because they did not specifically allocate settlement amounts between Murphy and Cavitch and because they lacked "other essential settlement terms required to execute a proper settlement agreement."

{¶33} The trial court, however, did not find an enforceable settlement agreement based on the settlement demand Rayco made at the mediation or its counsel's January 26, 2017 letters to appellees' counsel. Rather, the trial court found that Murphy's counsel's February 23, 2017 email constituted an "unambiguous offer" to Rayco to settle the case for $3,050,000, which Rayco accepted when its counsel, Attorney Kehoe, left a voicemail message for Murphy's counsel later that day. The trial court found that the parties' agreement was "further evidenced" by (1) Attorney Drushal's February 24, 2017 email, (2) Rayco's counsel's circulation of its proposed revisions to the settlement agreement on March 10, 2017 leaving the figure of $3,050,000 undisturbed and (3) Attorney Kehoe's statement on April 4, 2017 that "the settlement document is fine" and that Bowling had previously agreed to the settlement.

{¶34} Accordingly, Rayco's first assignment of error is meritless.

**Standard of Proof**

{¶35} In its third assignment of error, Rayco contends that the trial court instructed the jury regarding, and itself applied, the wrong standard of proof. Rayco argues that if the trial court had properly instructed the jury that appellees needed to prove the existence of a settlement agreement

by clear and convincing evidence rather than a preponderance of the evidence, "the jury may well have ruled in Rayco's favor." Rayco further argues that "[t]o the extent the trial court acted independently of the advisory jury," the trial court erred in applying a preponderance of the evidence standard rather than a clear and convincing evidence standard in determining whether a settlement agreement existed.

{¶36} This was a bench trial with an advisory jury pursuant to Civ.R. 39(C)(1). The advisory jury in this case was not the factfinder. After receiving answers to interrogatories and the verdict from the advisory jury, the trial court made its own findings of fact and conclusions of law. As the trial court stated in its journal entry: "Based upon all the evidence, I find that there is a contract to settle with terms that are clear and enforceable." As such, any error in the trial court's instructions to the advisory jury was harmless.

{¶37} There is no indication in either the trial transcript or the trial court's decision what standard of proof the trial court applied in determining that a settlement agreement existed. As a general matter, "[a] presumption of regularity attaches to all judicial proceedings." *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 19. This presumption of regularity extends to the trial court's application of the correct burden of proof. Thus, we presume that the trial court applied the correct legal standard absent an affirmative demonstration otherwise. *See, e.g., In re Adoption of K.N.W.*, 4th Dist. Athens Nos. 15CA36 and 15CA37, 2016-Ohio-5863, ¶ 44; *Wilson v. Jones*, 3d Dist. Seneca No. 13-13-06, 2013-Ohio-4638, ¶ 28.

{¶38} Citing *Brilla v. Mulhearn*, 168 Ohio App.3d 223, 2006-Ohio-3816, 859 N.E.2d 578, ¶ 21 (9th Dist.), *Foor v. Columbus Real Estate Pros.com*, 5th Dist. Delaware No. 12 CAE 08 0063, 2013-Ohio-2848, ¶ 26, and *Ivanicky v. Pickus,* 8th Dist. Cuyahoga No. 91690, 2009-Ohio-37, ¶ 8, 13, Rayco contends that "[w]hen asked to enforce a settlement agreement," the "correct legal

standard" is whether the record contains clear and convincing evidence of both the terms of the settlement agreement and the parties' assent to those terms. Rayco further contends that since the trial court instructed the advisory jury that appellees needed to prove the existence of a settlement agreement by a preponderance of the evidence, we must assume that the trial court applied a preponderance of the evidence standard in determining that the parties had agreed to settle the case for $3,050,000.

{¶39} Following a thorough review of the record and the relevant case law, we cannot say that the trial court applied the wrong standard of proof in determining that a settlement agreement existed in this case. In the cases cited by Rayco, the evidence the court relied upon when referencing the clear and convincing evidence standard was evidence of an oral settlement agreement. *See Brilla* at ¶ 20-21 (observing that "a settlement agreement may be enforced regardless of whether it has been reduced to writing, as long as the terms of the agreement can be established by clear and convincing evidence" and concluding that an enforceable settlement agreement existed where, "even disregarding the magistrate's documentation of [the parties' settlement] agreement," it was clear to the court that the terms of the agreement and appellant's assent to those terms "may be established by clear and convincing evidence"), citing *Shetler v. Shetler*, 9th Dist. Wayne No. 00CA0070, 2001 Ohio App. LEXIS 2289, 3 (May 23, 2001) ("An oral settlement agreement 'can be enforced by the court in those circumstances where the terms of the agreement can be established by clear and convincing evidence.'"), quoting *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 799, 615 N.E.2d 1071 (10th Dist.1992); *Foor* at ¶ 5, 26 (where during a telephone conversation, counsel agreed that the parties would each "walk away" but the parties did not mutually understand what that meant, court erred in finding that a "completed settlement agreement" was proven by clear and convincing evidence); *see also Cugini & Capoccia*

*Builders, Inc. v. Tolani*, 5th Dist. Delaware No. 15 CAE 10 0086, 2016-Ohio-418, ¶ 18 ("when the alleged settlement agreement is verbal and not written, the existence and the terms of such agreement must be established by clear and convincing evidence"); *Stanton v. Holler*, 7th Dist. Belmont No. 07 BE 29, 2008-Ohio-6208, ¶ 14 ("A settlement agreement that has not been reduced to writing may be enforced if its terms can be established by clear and convincing evidence.").

{¶40} In this case, by contrast, the purported settlement agreement is evidenced by writings on all sides, including the mutual exchange of drafts of the written settlement agreement that set forth the essential terms of the settlement.

{¶41} Further, in *Ivanicky*, although the appellant argued on appeal that the trial court had erred in enforcing appellee's motion to enforce settlement agreement because appellee did not offer clear and convincing evidence that an oral settlement agreement had been reached, this court held only that the trial court had erred in failing to hold an evidentiary hearing prior to confirming the settlement; it did not indicate what standard should be applied in determining whether an enforceable settlement agreement existed. *Ivanicky* at ¶ 8, 13.

{¶42} Particularly where, as here, there is written evidence of a settlement agreement, other courts — including this court — have indicated that a preponderance of the evidence standard applies in determining whether a settlement agreement exists. *See, e.g., Hillbrook Bldg. Co. v. Corporate Wings*, 8th Dist. Cuyahoga No. 68619, 1996 Ohio App. LEXIS 3854, 9-13 (Sept. 5, 1996) ("'Reduced to its simplest terms, a settlement agreement is a contract. The party asserting the contract (settlement agreement) must prove by a preponderance of the evidence the existence of the elements of the contract, including an offer, acceptance and consideration as to the existence of the contract and as to its terms.'"), quoting *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.*, 8 Ohio App.3d 236, 456 N.E.2d 1309 (10th Dist.1982); *see also Sutter v. Henkle*, 3d Dist. Mercer

No. 10-15-14, 2016-Ohio-1143, ¶ 9; *Savoy Hospitality, LLC v. 5839 Monroe St. Assocs. LLC*, 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 26; *Burrell Indus. v. Cent. Allied Ents.*, 7th Dist. Belmont Nos. 96 BA 18 and 96 BA 25, 1998 Ohio App. LEXIS 6176, *12-13 (Dec. 15, 1998); *Rondy, Inc. v. Goodyear Tire Rubber Co.*, 9th Dist. Summit No. 21608, 2004-Ohio-835, ¶ 7; *State v. Lomaz,* 11th Dist. Portage Nos. 2002-P-0118, and 2003-P-0062, 2006-Ohio-3886, ¶ 48; *DSW, Inc. v. Zina Eva, Inc.*, S.D.Ohio No. 2:11-cv-0036, 2011 U.S. Dist. LEXIS 143377, *5 (Dec. 13, 2011), quoting *Ohio State Tie & Timber* ("Although there is some suggestion that if the agreement is oral only, the burden of proof is by clear and convincing evidence, * * * where there is a written agreement, the burden (under Ohio law) appears to be the same as in any other case based on breach of contract, and that is to 'prove by a preponderance of the evidence the existence of the elements of the contract, including offer, acceptance and consideration both as to the existence of the contract and as to its terms.'").

{¶43} In this case, however, regardless of whether a preponderance of the evidence or a clear and convincing evidence standard applies, a review of the record shows that the trial court's finding that the parties entered into an enforceable settlement agreement is supported by sufficient competent, credible evidence. Here, the material facts relating to the parties' settlement negotiations were undisputed. Based on the facts set forth in the parties' joint stipulation of undisputed facts, not only was there a clear offer and acceptance showing a mutual understanding of the essential terms, the parties thereafter confirmed their settlement agreement in various follow-up communications. The only evidence Rayco offered to refute the existence of a settlement agreement was Attorney Drushal's testimony that he believed "everybody needed to sign off" on the final version of the agreement before the parties had a settlement. However, that testimony was contradicted by (1) his co-counsel's April 4, 2017 voicemail message to Attorney

Vargo (in which Attorney Kehoe stated indicated that "[t]he settlement document itself is fine" and that "[w]e had John [Bowling's] commitment to settle with the number that we agreed upon, but he's being a little bit difficult in getting the document signed") and (2) Attorney Kehoe's testimony at the hearing that he had intended, by his words and actions, to consummate a settlement with appellees' counsel. Thus, the uncontroverted evidence in this case was not only sufficient to prove the existence of a settlement agreement by the greater weight of the evidence under a preponderance of the evidence standard but was also sufficient to produce a firm belief or conviction in the mind of the trier of fact as to the existence of a settlement agreement, so as to establish the existence of a settlement agreement under a clear and convincing evidence standard. *See In re Phillips*, 3d Dist. Marion Nos. 9-96-44, 9-96-45, and 9-96-46, 1997 Ohio App. LEXIS 1152, 4-8 (Mar. 13, 1997) (trial court's improper use of a lower standard of proof was harmless error where the evidence plainly demonstrated that the movant had proven its case by the requisite clear and convincing evidence).

{¶44} Accordingly, we overrule Rayco's third assignment of error.

**The Witness-Advocate Rule**

{¶45} In its second assignment of error, Rayco argues that the trial court erred by permitting appellees' counsel to testify at the hearing in violation of the "witness-advocate rule." The "witness-advocate rule" is based on Ohio R.Prof.Cond. 3.7(a). That rule provides:

> A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case;
>
> (3) the disqualification of the lawyer would work substantial hardship on the client.

**{¶46}** Prof.Cond.R. 3.7(a), however "does not render a lawyer incompetent to testify as a witness on behalf of his client. Rather, * * * the [r]ule functions to allow the court to exercise its inherent power of disqualification to prevent a potential violation of [the ethics rules]." *Damron v. CSX Transp., Inc.*, 184 Ohio App.3d 183, 2009-Ohio-3638, 920 N.E.2d 169, ¶ 39 (2d Dist.); *see also Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St.3d 256, 258-259, 510 N.E.2d 379 (1987) (noting that the "Code of Professional Responsibility 'does not delineate rules of evidence but only sets forth strictures on attorney conduct'" and that "[w]hen an attorney seeks to testify, his employment as counsel goes to the weight, not the competency, of his testimony"), quoting *Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 539 (3d Cir. 1976). In *Mentor Lagoons*, the Ohio Supreme Court, applying the disciplinary rules then in place, set forth a procedure for courts to follow in determining whether a lawyer can serve as both an advocate and a witness. *Mentor Lagoons* at paragraph two of the syllabus; *see also 155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 427-428, 650 N.E.2d 869 (1995). As the Second District explained in *Damron*, when applying that procedure in the context of the subsequently adopted Ohio Rules of Professional Conduct:

> In determining whether a lawyer can serve as both an advocate and a witness, a court must first determine the admissibility of his testimony without reference to the Disciplinary Rules. If the court finds the testimony admissible, and a party or the court moves for the attorney to withdraw or be disqualified, the court must then consider whether any exceptions to Prof.Cond.R. 3.7(a) apply to permit the attorney to both testify and continue representation.

*Id.* at ¶ 39. Where a party moves for disqualification, the moving party bears the burden of proving that disqualification is necessary. *McCormick v. Maiden*, 6th Dist. Erie No. E-12-072, 2014-Ohio-1896, ¶ 11, citing *Baldonado v. Tackett*, 6th Dist. Wood No. WD-08-079,

2009-Ohio-4411, ¶ 20. The burden of proving that one of the exceptions in Prof.Cond.R. 3.7(a)(1)-(3) applies falls upon the attorney seeking to claim the exception. *McCormick* at ¶ 11.

{¶47} In this case, the trial court was not asked to exercise its "inherent power of disqualification" to prevent a potential violation of the Rules of Professional Conduct. Instead, after appellees' counsel conducted voir dire, gave their opening statements and called their first witness — Attorney Vargo — Rayco's counsel objected to his testimony based on the witness-advocate rule.

{¶48} It should have come as no surprise that counsel for appellees would testify at the evidentiary hearing. This is not a case in which the testimony presented could have been elicited by other means. Aside from the mediator and the clients themselves, who were not directly involved in the settlement negotiations after the parties stopped working with the mediator, the only persons with personal knowledge regarding the parties' settlement negotiations were the parties' attorneys. Although the parties had attempted to avoid having their attorneys testify by submitting a joint motion for leave to file stipulation of undisputed facts regarding defendants' motion to enforce settlement agreement, the trial court denied their request to have appellees' motion decided based on the stipulation.

{¶49} As explained in the comments to Prof.Cond.R. 3.7, the rationale for the advocate-witness rule is as follows:

> The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Comment 2, Prof.Cond.R. 3.7.

**{¶50}** Rayco argues that it was prejudiced by appellees' counsel serving as both witnesses and advocates at the hearing because it enabled appellees' counsel to refer to their own testimony during closing arguments and urge the jury to accept their recitation of the facts — in essence vouching for "the truthfulness of their own testimony."

**{¶51}** However, in this case, the jury had only an advisory role. The advisory jury gave its "advice," based on its view of the evidence, to the trial court, but its decision was not binding on the trial court. The trial court was required to make its own independent findings of fact and conclusions of law as if there had been no verdict from the advisory jury. The trial court was well aware of the different roles assumed by appellees' counsel at the hearing and was not likely to be confused or misled by the lawyers' dual capacities. *See Michael P. Harvey Co., L.P.A. v. Ravida*, 2012-Ohio-2776, 972 N.E.2d 1087, ¶ 5 (8th Dist.) (noting that "[t]he concerns expressed in the comments to Prof.Cond.R. 3.7(a)(2)" had "no applicability" where the case was tried to the court, the court "fully understood" that lawyer was acting pro se and "should have been able to distinguish between his role as advocate and his role as a witness without the same risk of confusion that might have been present had the case been tried to a jury").

**{¶52}** Further, the matters as to which appellees' counsel testified were not in dispute. *See* Prof.Cond.R. 3.7(a)(1). Appellees' counsel's testimony tracked the stipulation of undisputed facts the parties had jointly submitted and admitted into evidence at the hearing. When testifying on cross-examination, Attorney Kehoe acknowledged that 95 percent of appellees' counsel's testimony was "substantively accurate" and that the "few details around the edges that [he] might * * * state differently" were not material.

**{¶53}** Accordingly, Rayco was not prejudiced by appellees' attorneys' testimony and the trial court did not abuse its discretion or otherwise err in permitting appellees' attorneys to testify at the hearing. *See Erie Air Conditioning & Heating, Inc. v. S.C. Co.*, 8th Dist. Cuyahoga No. 63216, 1993 Ohio App. LEXIS 3652, 19-22 (July 22, 1993) (trial court did not abuse its discretion in failing disqualify plaintiff's counsel or in allowing plaintiff's counsel to testify in defense of counterclaim and in rebuttal of defendants' case-in-chief where motion to disqualify counsel was filed on the eve of trial and to have prevented counsel from testifying would have worked a substantial hardship on the client given counsel's unique role in the contested dealings). Rayco's second assignment of error is overruled.

### Request for Attorneys' Fees Incurred to Enforce the Settlement Agreement

**{¶54}** In their cross-assignment of error, appellees contend that the trial court erred in denying their request for an award of the reasonable attorney fees they incurred to enforce the parties' settlement agreement. We agree.

**{¶55}** Ordinarily, the decision whether to award attorney fees is within the sound discretion of the trial court. *See, e.g., Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991); *Buck v. Pine Crest Condominium Assn. Group D-E-F*, 8th Dist. Cuyahoga No. 97861, 2012-Ohio-5722, ¶ 27. Absent a clear abuse of that discretion, the trial court's decision should not be reversed. An abuse of discretion implies that a decision is unreasonable, arbitrary, or unconscionable. It may be found where the trial court applies the wrong legal standard, misapplies the correct legal standard or relies on clearly erroneous findings of fact. *Resco Holdings, L.L.C. v. AIU Ins. Co.*, 8th Dist. Cuyahoga No. 106234, 2018-Ohio-2844, ¶ 13; *Thomas* at ¶ 15.

**{¶56}** Public policy strongly favors the enforcement of settlement agreements. *See, e.g., Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 38, 285 N.E.2d 324 (1972) ("'The law favors the resolution of controversies and uncertainties through compromise and settlement rather than through litigation. * * * The resolution of controversies * * * by means of compromise and settlement * * * results in a saving of time for the parties, the lawyers, and the courts, and it is thus advantageous to judicial administration, and, in turn, to government as a whole.'"), quoting 15 American Jurisprudence 2d, Compromise and Settlement, Section 4 at 938; *Turoczy*, 8th Dist. Cuyahoga No. 106494, 2018-Ohio-3173, at ¶ 16 ("Settlement agreements are generally favored in the law."); *see also Fugo*, 8th Dist. Cuyahoga No. 106469, 1996 Ohio App. LEXIS 2725, at 10 ("public policy strongly favors the enforcement of settlements freely arrived at").

**{¶57}** Ohio follows the "American rule," which provides that a prevailing party in a civil action may not generally recover their attorney fees as part of the costs of litigation unless attorney fees are provided for by statute, the non-prevailing party acts in bad faith or there is an enforceable contract that specifically provides for the losing party to pay the prevailing party's attorney fees. *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. Appellees do not contend that any of these exceptions apply here.

**{¶58}** Rather, appellees argue that, notwithstanding the American rule, they are entitled to recover the reasonable attorney fees they incurred in enforcing the parties' settlement agreement as compensatory damages for Rayco's breach of the settlement agreement.

**{¶59}** This court previously addressed the issue of whether a party can recover attorney fees as compensatory damages for breach of a settlement agreement in *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318 (8th Dist.).

**{¶60}** In *Berry*, an employee, Berry, filed suit against his supervisor and employer, Wachovia Securities ("Wachovia"), alleging that Wachovia breached an agreement to pay the full amount of Berry's share of an arbitration award that had been entered against Berry in an arbitration between Berry and his former employer, Merrill Lynch. *Id.* at ¶ 1. The arbitration panel awarded Merrill Lynch $250,000 on its claims against Berry and awarded Berry $125,000 on his claim against Merrill Lynch. *Id.* at ¶ 2. Wachovia paid the $250,000 judgment against Berry. *Id.* at ¶ 3. Berry endorsed the $125,000 check he received from Merrill Lynch and gave it to his Wachovia branch manager with a note requesting that the check be placed on deposit "to offset the interest due on our contract" and indicating that "[t]he $125,000 is to be returned on demand." *Id.* at ¶ 3-4. The check was deposited into a Wachovia account dedicated to legal settlements. Berry later asked to have the check returned to him but Wachovia refused to return it. *Id.* at ¶ 5. Wachovia filed a counterclaim, alleging that Berry had breached an agreement that he would reimburse Wachovia for certain of the amounts it had paid to Merrill Lynch in satisfaction of the arbitration award. *Id.* at ¶ 1, 6. It sought to recover as damages the attorney fees it would be required to expend to enforce the agreement. *Id.* at ¶ 6.

**{¶61}** At trial, the issue was whether the parties had agreed that the sum Berry received from Merrill Lynch would be set off against the $250,000 Wachovia paid to Merrill Lynch to satisfy the judgment against Berry. *Id.* at ¶ 7. In its closing argument, Wachovia asked the jury to "return an award * * * for $133,691 which is the amount of the fees and expenses we've incurred in defending the case." *Id.* at ¶ 34. The jury found against Berry on all of his claims and in favor of Wachovia on its counterclaim; it awarded Wachovia $432,000 in damages for the attorney fees Wachovia incurred in enforcing the settlement agreement. *Id.* at ¶ 8.

**{¶62}** Berry appealed to this court, asserting, among other arguments, that the award of attorney fees to Wachovia violated the "American Rule." *Id.* at ¶ 18-19. This court disagreed. It held that Berry had breached the settlement agreement when he filed suit against Wachovia, seeking the return of the $125,000. *Id.* at ¶ 15. It further held that the attorney fees Wachovia incurred to enforce the settlement agreement were recoverable as compensatory damages resulting from Berry's breach of their agreement. *Id.* at ¶ 19-20. As the court explained:

> Ohio adheres to the rule that "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009 Ohio 306, 906 N.E.2d 396, at ¶ 7. However, attorney fees are allowed as compensatory damages when the fees are incurred as a direct result of the breach of a settlement agreement. *See Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. No. OT-09-026, 2010-Ohio-4714, ¶ 34; *Tejada-Hercules v. State Auto. Ins. Co.*, 10th Dist. No. 08AP-150, 2008-Ohio-5066, ¶ 10. The rationale behind the exception for allowing attorney fees expended as a result of enforcing a settlement agreement is that "any fees incurred after the breach of the settlement agreement were relevant to the determination of compensatory damages, including those fees [a party was] 'forced' to incur by filing the action." *Tejada-Hercules* at ¶ 10.

> The legal fees awarded in this case were the measure of compensatory damages directly related to Wachovia's need to enforce the settlement agreement. The court did not err by awarding Wachovia its attorney fees as compensatory damages.

*Id.* at ¶ 19-20. Because it found the jury's damages award to be "plainly excessive," the court gave Wachovia the option of accepting a remittitur of the damages award to $133,691 – the amount that Wachovia requested and proved at trial — or a new trial. *Id.* at ¶ 44, 46.

**{¶63}** Thus, under *Berry*, where a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees through continued litigation to enforce the settlement agreement, those fees are recoverable as "compensatory damages" for breach of the settlement agreement. Because the attorney fees sought in that context are regarded as compensatory damages — rather than as costs of litigation to remedy a breach of contract — the

American rule does not preclude their recovery even where none of the other exceptions to the American rule applies. *See also Shelly Co. v. Karas Properties*, 8th Dist. Cuyahoga No. 98039, 2012-Ohio-5416, ¶ 41 (observing that "[c]ourts often award attorney fees incurred after the breach of a settlement agreement because 'when a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim,'" but concluding that *Berry* did not apply because cross-appellant's breach of contract claim did not involve a settlement agreement), quoting *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 99AP-772, 2000 Ohio App. LEXIS 2391 (June 6, 2000). *Berry* is consistent with the strong public policy that exists in encouraging settlements and enforcing settlement agreements.

{¶64} A number of cases from other jurisdictions are in accord. *See, e.g., Brown v. Spitzer Chevrolet Co.,* 5th Dist. Stark No. 2012 Ca 00105, 2012-Ohio-5623, ¶ 19-21; *Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 33-34; *State ex rel. Ohio AG v. Tabacalera Nacional, S.A.A.*, 10th Dist. Franklin No. 12AP-606, 2013-Ohio-2070, ¶ 34-35; *Tejada-Hercules v. State Auto. Ins. Co.*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, ¶ 9-11; *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 99AP-772, 2000 Ohio App. LEXIS 2391, 11-15 (June 6, 2000); *Myron C. Wehr Props., L.L.C. v. Petraglia*, 2016-Ohio-3126, 65 N.E.3d 242, ¶ 36, 38 (7th Dist.)*; see also Rohrer Corp. v. Dane Elec Corp. USA*, 482 Fed.Appx. 113, 115-117 (6th Cir.2012) ("Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary, even where none of the exceptions to the American Rule have been shown."); *Wilson v. Prime Source Healthcare of Ohio*, N.D.Ohio No. 1:16-cv-1298, 2018 U.S. Dist. LEXIS 34445, 8-9 (Mar. 2, 2018) (Where a settling party forces the other party to litigate a motion to

enforce the settlement, the party forced to enforce the settlement agreement is entitled to attorney fees stemming from the additional litigation as compensatory damages). *But see Mayfran Internatl. v. May Conveyor, Inc.*, 8th Dist. Cuyahoga No. 62913, 1993 Ohio App. LEXIS 3511, 15 (July 15, 1993) (reversing trial court's award of attorney fees as compensatory damages for breach of settlement agreement, reasoning that "absent a statutory provision, a prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith").

{¶65} The trial court did not address *Berry* in its decision below[5] and Rayco does not address this aspect of *Berry* in its brief.[6] Instead, Rayco cites *Kornick v. Zomparelli*, 8th Dist. Cuyahoga Nos. 53599, 53875, 1988 Ohio App. LEXIS 896, 9 (Mar. 17, 1988), for the proposition that "[t]he Eighth District has specifically recognized that the American Rule applies to actions seeking to enforce a settlement agreement," and *Mayfran* at 15*, Doss v. Cleveland*, 8th Dist. Cuyahoga No. 1995 Ohio App. LEXIS 659 (Feb. 23, 1995), and *Ludwinski v. Seven Hills*, 8th Dist. Cuyahoga No. 52416, 1987 Ohio App. LEXIS 8659, 10-11 (Sept. 10, 1987), for the proposition that "in the absence of a finding of bad faith, a trial court commits reversible error in awarding attorney fees on a motion to enforce a settlement agreement."

---

[5]The trial court did, however, address *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 99AP-772, 2000 Ohio App. LEXIS 2391 (June 6, 2000).   The trial court refused to apply *Shanker*, concluding that to "adopt[] the *Shanker* rationale," would "nullify the American rule."

[6]Although Rayco cites *Berry* in its brief, it does so only for the proposition that a party seeking to recover legal fees must offer evidence showing the fees charged, the reasonableness of the fees charged and the number of hours worked.   At oral argument, for the first time, Rayco attempted to distinguish *Berry* on the ground that, in *Berry,* Wachovia was forced to litigate the existence of the settlement agreement in a separate action rather than by filing a motion to enforce settlement in a pending action.    It also argued that the award of attorney fees in *Berry* could be interpreted as an award based on Berry's bad faith in breaching the settlement agreement.   Finally, it argued   that to the extent *Berry* conflicts with *Mayfran. Mayfran* is controlling over *Berry* because *Mayfran* was decided first. Rayco's arguments are not persuasive.

Likewise, other than a brief discussion of *Kornick,* appellees failed to distinguish or otherwise address any of the authorities cited by Rayco on this issue in their brief.

**{¶66}** In *Kornick*, although the court acknowledged the "general rule" that "attorney fees are not recoverable in contract actions unless there has been a showing of bad faith or wrongful motives," it affirmed the trial court's award of $225 in attorney fees to appellees for appellant's breach of a settlement agreement, reasoning that the award was "justified" "[g]iven appellees' attempts to personally enforce the agreement as well as the necessity to seek the court's assistance in that same regard." *Id.* at 9. It is unclear from the court's decision whether it found that the evidence of failed "attempts to personally enforce the agreement" and "necessity to seek the court's assistance" was sufficient to support an award of attorney fees based on "bad faith or wrongful motives" or whether it recognized another exception to the general rule where a party incurs attorney fees to enforce a settlement agreement.

**{¶67}** In *Doss*, appellants argued that they were entitled to recover their attorney fees because appellee's failure to timely credit their benefits constituted bad faith — of which the court found no evidence — not as compensatory damages incurred to enforce the parties settlement agreement. *Id.* at 2, 4-6. Similarly, in *Ludwinski*, this court found that the trial court did not abuse its discretion in denying appellant's request for attorney fees after certain appellees "reneged" on a settlement agreement. This court noted that although the trial court enforced the settlement, it found the appellees' conduct to be "just" in light of the fact that the trial court had dismissed the case based on appellant's failure to file preliminary judicial title reports. *Id.* at 10-11. No argument appears to have been made, and the court did not otherwise address, whether attorney fees incurred in enforcing a settlement agreement could be recovered as compensatory damages.

**{¶68}** *Stringer v. Dept. of Health-Ohio*, 8th Dist. Cuyahoga No. 102166, 2015-Ohio-2277, ¶ 5-6. *Simmons v. Lee*, 8th Dist. Cuyahoga No. 103108, 2016-Ohio-25, ¶ 16, and *State ex rel.*

*Delmonte v. Woodmere*, 2005-Ohio-6489, ¶ 53 — the additional authorities upon which Rayco relies for its argument that the trial court did not abuse its discretion in denying appellees' request for attorney fees — are likewise distinguishable.

{¶69} In *Stringer*, the attorney fee issue was not raised on appeal. In *Simmons*, this court held that the trial court acted within its discretion in denying appellant's motion for attorney fees based on his alleged untimely receipt of settlement proceeds from the estate, because (1) there was no evidence in the record that the administrator "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"; (2) the alleged delay in appellant's receipt of the settlement proceeds was "nonexistent"; (3) appellant was the last party to sign the settlement agreement and (4) in signing the agreement, he agreed that all pending motions were withdrawn as moot. *Simmons* at ¶ 5, 15-16. Once again, no argument appears to have been made, and the court did not otherwise address, whether attorney fees incurred in enforcing a settlement agreement could be recovered as compensatory damages.

{¶70} In *Delmonte*, the village of Woodmere sought to recover its attorney fees under R.C. 2323.51, the frivolous conduct statute, after appellee breached a settlement agreement. *Delmonte* at ¶ 52-56. There is no claim or argument in this case that appellees are entitled to attorney fees under the frivolous conduct statute.

{¶71} We acknowledge that a panel of this court reached a different result in *Mayfran,* 8th Dist. Cuyahoga No. 62913, 1993 Ohio App. LEXIS 3511. However, that decision, unlike *Berry*, is not controlling authority.[7] Although in *Berry*, the nonbreaching party sought enforcement of its

---

[7] In the past, "reported" decisions were controlling authority in the district, and "unreported" decisions were merely "persuasive." As of May 1, 2002, the Supreme Court abolished the distinction between "controlling" and "persuasive" opinions, based merely upon whether a case is "reported." *See* Rep.Op.R. 3.4 ("All opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published."). As an

counterclaim in a separate action rather than by filing a motion to enforce settlement, we see no reason that a different rule should apply depending on how a party seeks to enforce a settlement agreement. *See, e.g., Wilson,* N.D., Ohio No.1:16-CV-1298, 2018 U.S. Dist. LEXIS 34445, at *8-9 ("Attorney's fees as compensatory damages are available whether a party files a separate breach of contract suit or a motion to enforce settlement before the original trial court."). In both instances, a party seeking to enforce a settlement agreement is subjected to additional or continued litigation as a result of the other party's attempted repudiation of a settlement agreement.

{¶72} Rayco also argues that we should affirm the trial court's decision because appellees presented no evidence at the hearing regarding the amount of attorney fees they incurred in enforcing the settlement agreement or the reasonableness of those fees. However, as stated in the trial court's journal entry, the issue to be decided at the hearing was "whether the parties entered into a contract to settle the lawsuit."[8] After that issue was decided, the trial court inquired whether it had "enough law [and] evidence" to decide "whether to award fees or not." The trial court granted the parties leave to submit "legal briefs" on the issue of whether "a motion to enforce in and of itself gives rise to a potential entitlement for fees." There was no opportunity for appellees to present evidence as to the amount of attorney fees they contended should be awarded.

{¶73} Accordingly, the trial court abused its discretion in denying appellees' request for attorney fees. Appellees' cross-assignment of error is sustained.

{¶74} The trial court's judgment is affirmed to the extent that it grants appellees' motion to enforce the settlement agreement and reversed to the extent that it denies appellees' motion for

---

unreported decision decided before May 1, 2002, *Mayfran* is not controlling authority. *See, e.g., In re B.L.*, 3d Dist. Allen Nos. 1-15-65, 1-15-66, 1-15-67, and 1-15-68, 2016-Ohio-2982, ¶ 11.

[8] Appellees also filed a motion in limine to limit testimony and evidence at the hearing to the issue of the "settlement between the parties," which the trial court granted.

attorney fees. Case remanded for a determination of the amount of reasonable attorney fees appellees incurred to enforce the settlement agreement.

**{¶75}** Judgment affirmed in part; reversed in part; case remanded.

It is ordered that appellees recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., CONCURS;
MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART

MELODY J. STEWART, J., CONCURRING IN PART, DISSENTING IN PART:

**{¶76}** I would affirm the trial court's decision in its entirety. The American Rule — that each party be responsible for its attorney fees — does not necessarily apply in actions to enforce a settlement agreement. *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 19 (8th Dist.) ("attorney fees are allowed as compensatory damages when the fees are incurred as a direct result of the breach of a settlement agreement."). The key point, however, is that attorney fees must be "compensatory damages" for enforcing a settlement, not merely attorney fees costs. Thus, in *Berry*, the party seeking to enforce a settlement had to file a separate action for breach of a settlement agreement.

{¶77} The law firms did not file a separate action to enforce the settlement agreement in this case. At all events, this was a legal malpractice case and the efforts to enforce the settlement were made by motion, not by a formal complaint in a separate action. It follows that the attorney fees were not sought as compensatory damages, but only as a cost of litigating the motion. The court did not err by denying the motion for attorney fees.